# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

December 1, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

LLOYD WINFRED CARDEN, JR.,   )
                                         )

       Plaintiff/Appellee,        )

                                           )    Coffee Chancery

                                           )    No. 93-189

VS.                                    )

                                           )    Appeal No.

                                           )    01-A-01-9502-CH-00042

AMY MALISSA CARDEN,        )

                                           )

       Defendant/Appellant.       )

APPEAL FROM THE CHANCERY COURT FOR COFFEE COUNTY
AT MANCHESTER, TENNESSEE

THE HONORABLE JOHN W. ROLLINS, JUDGE

For the Plaintiff/Appellee:

Roger J. Bean
Henry, McCord & Bean
Tullahoma, Tennessee

For the Defendant/Appellant:

Darrell L. Scarlett
Murfreesboro, Tennessee

## AFFIRMED IN PART; MODIFIED IN PART AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the custody and support of two children under twelve years of age. Both parents sought a divorce and requested custody of the children. Following a bench trial, the Chancery Court for Coffee County granted the divorce to the father, awarded him custody of the children, and directed the mother to pay child support. Both parents have appealed. The mother takes issue with awarding custody to the father; while the father challenges the amount of the child support award. We have determined that the evidence does not preponderate against awarding custody of the children to the father but that the trial court should not have reduced the amount of the mother's child support obligation by the mother's cost of providing the children's medical insurance. Accordingly, we affirm the judgment as modified and remand for further proceedings.

## I.

Lloyd Winfred Carden, Jr. and Amy Malissa Fults met on a blind date in 1979. Ms. Fults was sixteen-years-old at the time, and Mr. Carden was twenty-three. They dated for two years and were married in October 1981. Their first daughter, Abigail Malissa, was born on February 15, 1984; their second daughter, Cassie Nicole, was born on April 22, 1987.

Mr. Carden has been employed by the Grundy County Board of Education since 1981. At the time of the trial, he was the principal of Pelham Elementary School, but he has also taught several different grades and has coached the boy's basketball team at Coalmont Elementary School. Ms. Carden obtained an associate of arts degree during the early years of the marriage. She has worked for several employers and at the time of the trial was working in the central office of the Coffee County Board of Education.

Ms. Carden was the children's primary care giver during the early years of the marriage. Mr. Carden assisted with the children but also devoted a substantial amount of time to his work and to pursuing his favorite leisure activities,

including hunting, fishing, and playing golf. Mr. Carden began to play more of a role in his daughters' lives as the marriage began to encounter problems.

The parties had some marital difficulties as early as 1984 or 1985. Mr. Carden was overtly suspicious about Ms. Carden's fidelity, and Ms. Carden believed that Mr. Carden was a "mama's boy" and that he tried to dominate her too much. The problems became worse in early 1993 after Ms. Carden's thirtieth birthday. Ms. Carden began a clandestine relationship with a man she had known in high school. She informed Mr. Carden that she had "changed" and began spending less time at home. Mr. Carden was required to assume more of the parenting responsibilities in Ms. Carden's absence. Mr. Carden filed for divorce in May 1993, shortly after Ms. Carden told him that she had consulted a lawyer and was leaning toward filing for divorce.

Ms. Carden moved out of the marital home in May 1993 for a trial separation. The parties' younger daughter accompanied her but returned a short time later to live with her father and her sister. Ms. Carden moved back into the marital home in June 1993, but the parties' relationship only worsened. Mr. Carden spent more time taking care of his daughters, while Ms. Carden spent less and less time at home. Ms. Carden justified her lengthy absences by explaining that she was working with her divorce lawyer and by complaining that she did not feel welcome at home because Mr. Carden was alienating her daughters' affections. When the parties finally separated in August 1993, the trial court awarded them temporary custody on a rotating basis.

Following a trial in January 1994, the trial court granted the divorce to Mr. Carden on the ground of inappropriate marital conduct. The court also awarded Mr. Carden custody of his daughters and directed Ms. Carden to pay $328.50 per month in child support, less the cost of medical insurance for the children. On this appeal, Ms. Carden asserts that the evidence does not support awarding sole custody of the children to Mr. Carden. For his part, Mr. Carden asserts that the trial court erred by permitting Ms. Carden to credit the cost of the children's medical insurance against her child support obligation.

## II.

We turn first to the question of the custody of the Cardens' two daughters. Based on our review of the record, we concur with the trial court's decision to award Mr. Carden custody of the parties' children.

## A.

The goal of the trial court and this court is to devise a custody and visitation arrangement that will best serve the children's physical and emotional needs. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). The courts' overriding emphasis is on the best interests of the children. *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983); *Contreras v. Ward*, 831 S.W.2d 288, 289 (Tenn. Ct. App. 1991). The interests of the parents are secondary. *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992); *Griffin v. Stone*, 834 S.W.2d 300, 302 (Tenn. Ct. App. 1992).

The best interests analysis does not employ hard and fast rules. *Taylor v. Taylor*, 849 S.W.2d 319, 327 (Tenn. 1993). It is factually driven and requires the courts to balance numerous considerations. *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990); *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). These considerations include, but are not limited to

> the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third-party support; the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

*Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983); *see also* Tenn. Code Ann. § 36-6-106 (Supp. 1995) (factors to be considered in a child custody proceeding).

Initial custody decisions are made using the "comparative fitness" analysis that requires courts to determine which of the available custodians is more fit than the other. *Bah v. Bah*, 668 S.W.2d at 666. Parents need not approach perfection to be awarded custody. *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973). Instead, the courts take parents as they find them at the time of the custody hearing and focus on each parent's ability to care for the child as it exists at that time and not before. *Steiner v. McBryde*, App. No. 01-A-01-9206-CV-00255, slip op. at 5, 18 T.A.M. 9-20, 7 T.F.L.L. 6-12 (Tenn. Ct. App. Feb. 10, 1993) (Mem.) (No Tenn. R. App. P. 11 application filed); *Hensley v. Middleton*, App. No. 88-196-II, slip op. at 10, 14 T.A.M. 1-20, 3 T.F.L.L. 4-20 (Tenn. Ct. App. Dec. 2, 1988) (No Tenn. R. App. P. 11 application filed).

Custody decisions inevitably hinge on subtle nuances in the parties' demeanor and credibility. Appellate courts are reluctant to second-guess the custody decisions of trial judges who have observed the witnesses and assessed their credibility. *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 96 (Tenn. Ct. App. 1988). Accordingly, we review custody decisions de novo upon the record with a presumption of correctness of the trial court's factual findings, unless the evidence preponderates otherwise. *Nichols v. Nichols*, 792 S.W.2d at 716; *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); Tenn. R. App. P. 13(d).

**B.**

Ms. Carden takes issue with the trial court's custody decision on two principal grounds. First, she points out that she was her daughters' primary custodian prior to 1993. Second, she points to Mr. Carden's interference with her relationship with her daughters since their final separation. Both these grounds deserve careful consideration but neither warrant changing the trial court's custody decision in this case.

## MS. CARDEN'S FORMER ROLE AS PRIMARY PARENT

Ms. Carden may very well have been her daughters' primary parent prior to 1993.[1] However, her attitude toward her family responsibilities changed significantly in the early part of 1993, and she does not dispute that Mr. Carden took over the primary parenting responsibilities at that time. While custody decisions are not made to reward or punish parents for past conduct, *Sutherland v. Sutherland*, 831 S.W.2d 283, 286 (Tenn. Ct. App. 1991); *Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991), custodial fitness must be determined in light of the parents' circumstances at the time of the hearing.

By the time of the January 1994 hearing, Mr. Carden had demonstrated his desire and ability to take on his parental responsibilities. While the evidence demonstrates that Ms. Carden is capable of being a good parent, it also supports the trial court's conclusion that Mr. Carden is likewise a good parent. The trial court did not find that Ms. Carden was incapable of being a good custodial parent; rather, it simply determined that Mr. Carden was comparatively more fit at the time of the divorce hearing. The evidence does not preponderate against this conclusion.

## MS. CARDEN'S FITNESS AS THE CUSTODIAL PARENT

The trial court heard numerous witnesses concerning the Cardens' marital difficulties and their respective parenting skills. After hearing three days of testimony, the trial court noted that "[i]n many respects I think both these folks are on equal footing in the cause and it's incumbent upon me to look at other things." The trial court then determined that Ms. Carden was comparatively less fit than Mr. Carden to be the custodial parent, not because of her extra-marital relationship

---

[1] The trial court credited Ms. Carden's testimony that she had been her daughters' primary caretaker before the early part of 1993. The court stated, "As a matter of fact, I really suspect Mr. Carden did spend his fair share of time hunting and fishing and that sort of thing and let the mama take care of the little ones. I don't doubt that a bit. And I'm also not surprised at his increasing interest in the welfare of his children after he started having trouble with his wife. That's human nature."

in 1993,[2] but because of her dishonesty during the marriage[3] and because of her lack of candor when explaining why she withdrew funds from a certificate of deposit intended to benefit her daughters. The trial court noted that parents "lead by example" and determined that a parent who was "fundamentally dishonest" would not be a good example to children.

We find that the evidence supports the trial court's determination that both Mr. Carden and Ms. Carden could serve as the custodial parent for their daughters. We also concur with the trial court's conclusion that Mr. Carden is comparatively more fit to be the custodial parent because of Ms. Carden's consistent pattern of dishonesty and deception since 1993. Accordingly, we affirm the trial court's decision to award custody of the children to Mr. Carden.

### MR. CARDEN'S ALIENATION OF THE CHILDREN

Ms. Carden's allegations concerning Mr. Carden's efforts to interfere with her relationship with her daughters raise a serious issue. Her largely unrefuted testimony concerning Mr. Carden's efforts to keep her daughters away from her, to induce them not to visit her, and to interfere with her planned visitations are disturbing. This conduct, if it continues, could reflect on Mr. Carden's fitness as the custodial parent.

Divorce takes its toll on both parents and children alike. In addition to the instability brought on by the dissolution of the family, children are also affected by the residual animosity between their parents. *King v. King*, App. No. 01-A-01-9110-PB-00370, slip op. at 4, 17 T.A.M. 46-23, 7 T.F.L.L. 2-7 (Tenn. Ct. App. Oct. 23, 1992) (No Tenn. R. App. P. 11 application filed). Custody and visitation decisions should interfere as little as possible with the development of a healthy relationship between the child and both parents. *Rogero v. Pitt*, 759 S.W.2d at

---

[2]The trial court stated that it was examining the proof "forgetting about the accusations of adultery."

[3]Ms. Carden admitted being untruthful about some credit cards she was hiding from Mr. Carden, a letter she had written to a man she met at a concert, and the identity of a person who was smoking in her house one day while Mr. Carden was not at home.

112; *Pizzillo v. Pizzillo*, 884 S.W.2d 749, 755 (Tenn. Ct. App. 1994). Devising suitable custody arrangements is always a sensitive matter and is further complicated when the parents' mutual disappointment and anger color their dealings with the children and each other.

The evidence indicates that Mr. Carden has attempted to affect Ms. Carden's relationship with her daughters.[4] Preserving the mother-daughter relationship is important in this case, and Mr. Carden's attempts to undermine Ms. Carden's relationship with her daughters are inappropriate and unwise because both children need a female role model at this stage in their lives. Interference with the development of the non-custodial parent's relationship with his or her children can in extreme circumstances warrant the reconsideration of a custody and visitation arrangement. Mr. Carden's conduct has not yet risen to this level, but we admonish him to promote rather than to interfere with Ms. Carden's relationship with the children.

## III.

Mr. Carden takes issue with the trial court's decision to permit Ms. Carden to deduct from her child support payments "[t]he amount which she is required to pay [for family medical coverage] over and above individual coverage." He asserts that permitting Ms. Carden to take this credit is contrary to the child support guidelines. We agree and, therefore, modify this portion of the final decree.

The child support guidelines assist the courts in setting child support by providing them with rebuttable presumptions with regard to the proper amount of child support based on the payor spouse's income and the number of children. Tenn. Code Ann. § 36-5-101(e)(1) (Supp. 1995); Tenn. Comp. R. & Regs. r. 1240-

---

[4]For example, Ms. Carden testified that she told Mr. Carden of her plans to take Abby to buy some bras, but before she could do so, Mr. Carden took Abby to the store himself and had a saleswoman help her. Ms. Carden also testified that when she made plans to take her daughters to a crafts fair on Mother's Day, Mr. Carden planned a fishing trip for the same day so that his daughters could not go with their mother. He then allegedly told them that Ms. Carden did not want to spend time together as a family.

2-4-.02(7) (1994). The amount of child support required by the guidelines is the minimum appropriate amount. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(5). Trial courts may depart from the guidelines, but only when applying the guidelines would be unjust or inappropriate in light of the facts of a particular case. Tenn. Code Ann. § 36-5-101(e)(1); Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7).

The guidelines contemplate that the obligor parent will be responsible for providing medical insurance for the minor children. While they do not affirmatively place this obligation on the obligor parent, the guidelines state explicitly that the courts must increase the amount of child support required by the guidelines if the custodial parent is required to obtain medical insurance for the children because the obligor parent has not done so. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(5); Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(a) (1994).

We interpret the guidelines to require the obligor parent to pay for the children's medical insurance in addition to whatever other child support might be required. The courts have little discretion with regard to this obligation and may only depart from the guideline's requirements if they make written, specific findings concerning why it would be unjust or inappropriate to require a particular obligor parent to pay for the children's medical insurance.[5]

The trial court made no written findings in this case that it would be unjust or inappropriate to require Ms. Carden to be responsible for paying the premiums for her children's health insurance. We have reviewed the evidence ourselves and find no factual basis for relieving Ms. Carden from her obligation under the guidelines to be financially responsible for providing her daughters' medical

---

[5]The Western Section has issued two seemingly inconsistent opinions with regard to an obligor parent's obligation to provide medical insurance. In 1993, it held that deducting the cost of medical insurance from the support required by the guidelines was error. *Whitsett v. Whitsett*, App. No. 02-A-01-9207-CV-00212, slip op. at 6, 18 T.A.M. 40-6, 8 T.F.L.L. 1-13 (Tenn. Ct. App. Sept. 10, 1993) (No Tenn. R. App. P. 11 application filed). More recently, it stated that arrangements for the minor children's medical insurance were within the trial court's discretion. *Ray v. Ray*, App. No. 02-A-01-9404-CV-00078, slip op. at 8, 20 T.A.M. 27-17, 9 T.F.L.L. 10-11 (Tenn. Ct. App. June 13, 1995) (No Tenn. R. App. P. 11 application filed). We have deliberately chosen not to follow either of these cases because neither recognizes that Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(a) requires the trial court to increase the child support award when the obligor is not providing medical insurance.

insurance.  Accordingly, the trial court erred by permitting Ms. Carden to credit the amount of her children's medical insurance premiums against the amount of her child support obligation.

## IV.

We affirm the judgment awarding custody of the Cardens' two daughters to Mr. Carden and vacate the portion of the judgment permitting Ms. Carden to deduct the amount of the children's medical insurance premiums from her child support obligation.  We also tax the costs of this appeal to Amy Malissa Carden and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, JUDGE