# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | | |
|---|---|---|
| **TERI MICHELLE PARKER,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Houston County Chancery |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **RICHARD KEN PARKER,** | ) | Appeal No. |
| | ) | 01A01-9504-CH-00138 |
| Defendant/Appellee. | ) | |

**FILED**

**October 2, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

## APPEAL FROM THE CHANCERY COURT OF HOUSTON COUNTY
## AT ERIN, TENNESSEE

### THE HONORABLE ALLEN WALLACE, CHANCELLOR

For the Plaintiff/Appellant:               For the Defendant/Appellee:

Robert Clive Marks                         Laurence M. McMillan, Jr.
Clarksville, Tennessee                     Clarksville, Tennessee

**AFFIRMED IN PART, REVERSED IN PART**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

# OPINION

In this case, Plaintiff-Appellant, Teri Michelle Parker (Wife), appeals the trial court's decision to award custody of the parties' child, Dylan Ken Parker, to Defendant-Appellee, Richard Ken Parker (Husband), alleging that the custody determination was based on the effects of racial prejudice. We affirm the trial court's award of custody to Husband.

This appeal is complicated by the fact that the parties filed no transcript of the trial court proceedings. Instead, they have filed a rather confusing Statement of the Evidence.[1] Moreover, as discussed below, the integrity of the Statement of the Evidence is challenged by Wife on appeal.

Husband and Wife were married in 1988. During the parties' marriage, Wife was employed as a licensed practical nurse. Wife began working for Dr. Sidberry, an African-American physician, at his medical clinic in March of 1993. In July of 1993, Wife filed for divorce, alleging grounds of inappropriate marital conduct and asking for custody of the parties' child. Husband counterclaimed, alleging inappropriate marital conduct and irreconcilable differences. Husband also sought custody of the parties' child.

At trial, Husband alleged that Wife was having an affair with Dr. Sidberry and that she had neglected Husband and their child to spend time with Dr. Sidberry. Wife denied any improper involvement with Dr. Sidberry or that she had neglected her son. After Wife's denial, Husband offered the testimony of a private investigator who presented a videotape indicating that Dr. Sidberry had spent several hours at Wife's apartment on more than one occasion.

One of the witnesses at trial was a pediatric nurse who had worked with Dr Sidberry. Over objection by Wife's counsel, the witness testified that it could be harmful for the minor child to be raised in the context of an interracial relationship between Wife and Dr. Sidberry. At the close of the parties' proof, the Chancellor found that Wife testified untruthfully and had engaged in inappropriate marital conduct. The trial court granted custody of the parties' child to Husband. The trial court also ordered that the child could not be around Dr. Sidberry, even though this relief had not been requested.

---

[1]The parties and the trial court have presented this Court with an unorthodox Statement of the Evidence. From the sparse record before us, it appears that counsel for Husband, in making his objections to Wife's proposed Statement of the Evidence, presented the trial court with a "redlined" version of Wife's proposed Statement of the Evidence. Instead of removing the editing marks and redlining from Husband's redlined version, the trial court adopted the Husband's version in its entirety, including the redlining. As such, the Statement is difficult to read and confusing.

Wife appealed the trial court's ruling. There was no transcript of the trial, so the parties prepared a proposed Statement of Evidence. Wife alleged that the trial court's ruling was a result of the judge's racial prejudice. She sought to include in the Statement of Evidence a statement purportedly made by the trial judge during the course of cross-examination of Wife's mother. The statement included a parenthetical indicating the trial judge's unspoken intention:

> She [Wife's mother] comes from the same school I do. She can't help the way she feels. Society today feels differently than the way we were brought up (this referred to the Wife who is white, seeing Dr. Sidberry, who is black. (sic)

The trial court held a post-trial hearing on the Statement of Evidence, and there is a transcript of the post-trial proceeding. The trial judge conceded that he had probably made a statement similar to that sought to be included by Wife, but denied the inference of racial prejudice in the parenthetical proposed by Wife's counsel:

> THE COURT: Never did I - and I do this in a lot of cases, I just have what children said. I a- am very much concerned with people, I guess for lack of a better term, shacking up. I am not referring to white and black. I am talking about people that live together without the benefit of marriage in front of children. No where did I ever mean - referring to Dr. Seaberry (sic), that he was black, no where did I mean that. What I was talking about in that case and I think if you have a transcript you will find out that I was talking about people that just go out her (sic) and shacking up, with children. I am opposed to that. The lawyers who regularly practice in front of me know that. I don't think that it is good for children, and that is what I was referring to. No where did I ever make any comment - it looked like to me ever since this trial started, has been trying to make effort to say that the Court has some objection [to] interracial associations. I don't care whether they are black, white, red or what they are, I am not going to allow children -- I don't allow children, some of them have to - to be around people that live together without the benefit of marriage. I am just opposed to it. And that is what I was referring to. No where did I ever intend nor do I even feel that way. So, I think it has been - I don't know where this come from, but I probably made some kind of a statement in there about that.
>
> MR. MARKS: Do you want me to - do you want me to elaborate on the information that I have got?
>
> THE COURT: No.
>
> MR. MARKS: The statement of the evidence.
>
> THE COURT: No. If you are referring to interracial - if you are referring to interracial, my concern about interracial marriages, interracial babies, you can forget it. I never said anything like that. I am talking about people that live in front of children, that's what - that is what I am opposed to and I will tell you in a minute, and I don't care - the Appellate Court may think I am wrong, if they do, they can tell me. But it is just no good for children. I remember telling her that she didn't - something along that line, but I was thinking one thing and everybody else was thinking something else. That is all I am talking about.
>
> MR. MARKS: I am not - I guess at this point I am talking about simply what the record says, I am not bringing up any interracial relationships as such, but there is nobody saying -
>
> THE COURT: Well, you have got in parenthesis here, this refers to the wife who is white and who is seeing Dr. Seaberry (sic) who is black.

MR. MARKS: Which - the language in parenthesis was put in parenthesis because you did not say that. That was the interpretation of the witness because right before you made this statement, it was the situation where Allen Kerns was riding Gayle Scism as a witness about Dr. Seaberry (sic) -

THE COURT: Well, its wrong.

MR. MARKS: - being black.

THE COURT: You can take the parenthesis out, I never referred to that. The Appellate Court can put any kind of interpretation they want to on it, but I am telling you, that's not my interpretation. That is not the way I intended it.

Counsel for Wife sought an evidentiary hearing, and this was denied. He then asked to make an offer of proof, and this was denied as well. The trial court then approved the Statement of Evidence proffered by Husband, which included the redlined deletion of the statements proposed by Wife.

On appeal, Wife asks this Court to set aside the award of custody to Husband because the trial court's decision was based on the effects of racial prejudice and because it was against the preponderance of the evidence. Wife also asserts that trial court erred in not permitting an evidentiary hearing or at least an offer of proof on the disputed portion of the Statement of Evidence.

Our review of this case is governed by Tenn. R. App. P. 13(d), which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the findings, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Where the evidence is conflicting, findings of the trial court are entitled to great weight on appeal because the trial judge had the opportunity to observe the manner and demeanor of the witnesses while testifying. *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. App. 1990), *cert. denied*, 502 U.S. 939, 112 S. Ct. 374, 116 L. Ed. 2d 326 (1991). On an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found on the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings. *Id.*

Wife argues that the trial court erred in not including in the Statement of Evidence the disputed statement that Wife's mother "comes from the same school" as the judge, with the parenthetical indicating that this referred to the interracial relationship between Wife and Dr. Sidberry. She also contends that the trial court erred in not permitting an evidentiary hearing or at least an offer of proof.

Generally, the trial court's approval of a statement of evidence is conclusive. Tenn. R. App.

3

P. 24(e). In *Hall v. Hall*, 772 S.W.2d 432 (Tenn. App. 1989), this court stated:

> Any question as to the accuracy of a transcript or statement of the evidence is to be submitted to and settled by the Trial Court, whose determination is conclusive absent extraordinary circumstances. T.R.A.P. Rule 24(c) and (e). The only resources of a trial judge for resolving such questions are (1) the memory of the trial judge, (2) memoranda of the trial judge, and (3) an evidentiary hearing to establish what evidence was presented during the trial. The third resource is seldom used, but, if used, and the evidence at such hearing is preserved on appeal, the appellate court might find some support therein for revision of the evidentiary record. There is no indication that any such hearing was held, and no record of the evidence adduced at such a hearing if held. This court has no access to the memory of the trial judge except the record, including the order and statement of the evidence signed by the Trial Judge. No other memoranda of the Trial Judge or any other person is preserved in this record.
>
> A finding of a trial judge as to what evidence was presented is a finding of fact which is entitled to a presumption of correctness unless the evidence (at the hearing on this subject) preponderates otherwise. T.R.A.P. Rule 13(d). There is no evidence otherwise. The ruling of the Trial Judge is presumed correct and is affirmed.

*Id.* at 435.

At the post-trial hearing in the present case, the trial judge essentially conceded that he had made remarks similar to those in dispute, excluding the parenthetical. In light of this, we hold that the trial court erred in excluding the statement from the Statement of Evidence. However, the trial court properly excluded the parenthetical portion of Wife's proposed statement that offered Wife's interpretation of the import of the trial judge's remarks. A statement of the evidence should convey a "fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(c). As such, it should be factual and thorough. However, it is not proper for a statement of the evidence to include an explanation of the unspoken intention of the person speaking. Therefore, the trial court did not err in excluding the parenthetical portion of Wife's proposed statement. It is unnecessary to address the argument that Wife was entitled to an evidentiary hearing or an offer of proof.

Wife asks this Court to set aside the award of custody to Husband, arguing that the decision was based on the effects of racial prejudice and against the preponderance of the evidence. On the issue of racial prejudice, Wife notes that the trial court permitted testimony from a pediatric nurse that Wife's interracial relationship could have a harmful effect on the child and that the trial judge prohibited the child from having any contact with Dr. Sidberry, even though Husband had not requested such relief. Wife interpreted the trial judge's statement, which was excluded from the Statement of Evidence, as a reference to the interracial relationship.

4

At the post-trial hearing, the trial judge vigorously denied that race was a factor in his decision. The trial judge explained that he had concern about a child being exposed to an unmarried couple living together and that he felt strongly about Wife's untruthfulness in maintaining that she was not involved with Dr. Sidberry.

The propriety of considering the effects of racial prejudice in a child custody decision was addressed by the United States Supreme Court in *Palmore v. Sidoti*, 466 U.S. 429, 104 S. Ct. 1879, 80 L. Ed. 2d 421 (1984). In *Palmore*, the father sought a change of custody because of the mother's cohabitation with an African-American, whom she later married. *Id.* at 430, 104 S. Ct. at 1880. The trial court awarded custody to the father, based in part on the "social stigmatization" that the child would suffer. *Id.* at 431, 104 S. Ct. at 1881.

The Supreme Court noted that the trial court candidly stated that race was a factor and further observed that the result would have been different had the mother's partner been a Caucasian. *Id.* at 432, 104 S. Ct. at 1881. The Court reversed, finding that the custody award violated the Equal Protection Clause of the United States Constitution:

> The question, however, is whether the reality of private biases and the possible injury they might inflict are permissible considerations for removal of an infant child from the custody of its natural mother. We have little difficulty concluding that they are not.[ ] The Constitution cannot control such prejudices but neither can it tolerate them. Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.

*Id.* at 1882 (footnote omitted).

In light of *Palmore*, it was error in this case for the trial court to permit expert testimony to the effect that Wife's involvement in an interracial relationship could harm the parties' child. Under *Palmore*, consideration of such evidence by the trial court was clearly unacceptable.

The trial court also clearly erred in holding that the child could have no contact with Dr. Sidberry. There is absolutely no support in the record for such relief, even if Husband had requested it. The trial court is reversed on this issue.

Against the background of the trial court's adamant statements that race was not an issue, as well the errors noted above, we must consider the award of custody to Husband. The applicable Tennessee statute requires that custody be determined "as the welfare and interest of the child or children may demand." Tenn. Code Ann. § 36-6-101(a) (1991 & Supp. 1995). In *Bah v. Bah*, 668 S.W.2d 663 (Tenn. App. 1983), this Court adopted a common sense approach to determining

custody, termed the doctrine of "comparative fitness." Id. at 666. ***Bah*** recognized that there are literally thousands of factors to be considered in determining the custody arrangement that is in the best interest of young children. ***Id.*** (citing ***Smith v. Smith,*** 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949)). The Court determined that the best way to review the multitude of factors was through a comparative approach. ***Id***. The Court quoted with approval from ***Edwards v. Edwards***, 501 S.W.2d 283 (Tenn. App. 1973), stating:

> Fitness for custodial responsibilities is *largely a comparative matter*. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.

***Bah***, 668 S.W.2d at 666 (quoting ***Edwards***, 501 S.W.2d at 290-91) (emphasis added by the ***Bah*** court).

In the instant case, the record clearly supports the trial court's finding that Wife was involved in an extramarital affair with Dr. Sidberry. Generally, sexual infidelity or indiscretion, by itself, does not disqualify a parent from being awarded custody. ***Sutherland v. Sutherland***, 831 S.W.2d 283, 286 (Tenn. App. 1991). "However, when the parent's sexual activities or indiscretion involve neglect of the minor child, such neglect may be considered in relation to the best interest of the minor child." ***Id***. (citing ***Mimms v. Mimms***, 780 S.W.2d 739, 745 (Tenn. App. 1989)).

There is evidence in the record from which the trial court could conclude that Wife's extramarital relationship caused her to neglect the child. Although this is denied by Wife, when an issue hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses that contradicts the trial court's findings. ***Galbreath v. Harris***, 811 S.W.2d 88, 91 (Tenn. App. 1990), ***cert. denied***, 502 U.S. 939, 112 S. Ct. 374, 116 L. Ed. 2d 326 (1991). Nothing in the record supports a finding that either parent is unfit. Under the comparative fitness doctrine, however, a parent need only be relatively more "fit" than the other in order to be awarded custody. Even considering the errors above, the preponderance of the evidence weighs in favor of the trial court's determination that custody by the Husband was in the best interest of the child. Therefore, the trial court is affirmed on this issue.

The trial court's award of custody to Husband is affirmed. The prohibition against the child coming in contact with Dr. Sidberry is reversed. Costs on appeal are taxed equally to Appellant and

6

Appellee, for which execution may issue if necessary.

                                                    _____
_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____
**W. FRANK CRAWFORD, P.J., W.S.**


_____
**DAVID R. FARMER, J.**

7