# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

October 28, 1998

Cecil W. Crowson
Appellate Court Clerk

MICHAEL ALLEN LANCE,         )
         )
    Plaintiff/Appellant,       )    Sumner Circuit
         )    No. 16685-C
VS.         )
         )    Appeal No.
TINA GAYLE LANCE,         )    01A01-9801-CV-00036
         )
    Defendant/Appellee.      )

APPEAL FROM THE CIRCUIT COURT
FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS GOODALL, JUDGE

For Plaintiff/Appellant:

Clark Lee Shaw
Nashville, Tennessee

For Defendant/Appellee:

F. Dulin Kelly
Andy L. Allman
Clinton L. Kelly
Hendersonville, Tennessee

**AFFIRMED IN PART; MODIFIED IN PART;
AND REMANDED**

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the custody of a five-year-old-girl. After three and one-half years of marriage, the father filed a divorce petition in the Circuit Court for Sumner County requesting custody of the parties' only child. The mother did not contest the divorce but sought custody of the parties' child. Following a bench trial, the trial court declared the parties divorced and awarded custody to the mother. The father asserts on this appeal that he should have been awarded the divorce and that he is comparatively more fit than the mother to have custody. We affirm the award of custody to the mother but remand the case with directions to modify the judgment to award the divorce to the father on the ground of inappropriate marital conduct.

## I.

Tina Gayle Lance and Michael Allen Lance met in April 1992 while working at Opryland, U.S.A. Ms. Lance was seventeen, and Mr. Lance was twenty-three years old. They became romantically involved, and on August 20, 1993, Ms. Lance gave birth to their daughter, Kayla Michelle Lance. The parties changed living arrangements quite often following the birth of the child, but finally, in February 1994, they moved into their own apartment in Madison.

The parties were married in July 1994. Ms. Lance was their daughter's primary caregiver but also worked full-time. Mr. Lance also worked full-time and attended classes at Volunteer State Community College where he was enrolled in the nursing program. When he was not working or attending classes, much of his time was spent studying. Both the maternal and paternal grandparents assisted with babysitting. In June 1995, the parties purchased a home in White House with financial assistance from Mr. Lance's parents.

Ms. Lance's parents moved back to Louisiana in November 1995. After visiting her parents twice in January and February 1997, Ms. Lance informed Mr. Lance that she wished to move back to Louisiana with the parties' daughter. Ms. Lance's attitude about Mr. Lance and her marriage changed dramatically when she returned from an extended visit to Louisiana in March 1997. Instead of returning to her home, she moved in with girlfriends and informed Mr. Lance that she desired to move to Louisiana permanently. Mr. Lance became suspicious about Ms. Lance's conduct when their phone bill revealed that she was making frequent telephone calls to a former boyfriend in Louisiana. Ms. Lance finally

admitted to Mr. Lance that she was having sexual relations in Louisiana with her old boyfriend.

The parties' marriage deteriorated rapidly. On April 1, 1997, Mr. Lance filed a petition for divorce in the Circuit Court for Sumner County and obtained a temporary restraining order preventing Ms. Lance from taking their daughter to Louisiana prior to the trial. The trial court dissolved the order on May 9, 1997 when it gave Ms. Lance temporary custody. Ms. Lance admitted in her answer that she had engaged in inappropriate marital conduct but requested custody of her daughter. Following a bench trial, the trial court declared the parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b) (1996),[1] awarded custody of the parties' daughter to Ms. Lance, and determined that the child's interests would be served best by permitting Ms. Lance and the child to move to Louisiana. Ms. Lance and Kayla have moved to Louisiana, where Ms. Lance works as a secretary at her uncle's real estate office. They live rent-free in a home owned by her parents. Mr. Lance continues to reside in the Nashville area and works at Vanderbilt Hospital as a nurse assistant.

## II.

Mr. Lance's primary issue on this appeal involves the custody decision. He asserts that the evidence does not support the trial court's finding that Ms. Lance is comparatively more fit to be the custodial parent. We have determined that the evidence does not preponderate against the court's conclusion.

## A.

Decisions involving the custody of children are factually driven and require the careful consideration of numerous considerations. *See Nichols v. Nichols,* 792 S.W.2d 713, 716 (Tenn. 1990); *Rogero v. Pitt,* 759 S.W.2d 109, 112 (Tenn. 1988). Among these considerations are:

> the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third-party support; the associations

---

[1] Prior to a 1998 amendment not applicable to this case, Tenn. Code Ann. § 36-4-129(b) provided: "The court may, upon such stipulations or upon proof, grant a divorce to the party who was less at fault or, if either or both of the parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone."

and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

*Bah v. Bah,* 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983); *see also* Tenn. Code Ann. § 36-6-106 (Supp. 1998). Since there are no hard and fast rules for determining which custody and visitation arrangement will best serve a child's needs, *see Taylor v. Taylor,* 849 S.W.2d 319, 327 (Tenn. 1993); *Dantzler v. Dantzler,* 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983), custody and visitation decisions are invariably dictated by the unique facts of each case.

The analytical framework for making original custody decisions requires the courts to examine the parents competing for custody to determine which of them is comparatively more fit to be the child's custodian. *See In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995); *Bah v. Bah*, 668 S.W.2d at 666. The courts understand that each parent has his or her own vices and virtues. *See Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). Accordingly, they do not base their custody decisions on which parent is "perfect," *see Bah v. Bah,* 668 S.W.2d at 666; *Edwards v. Edwards,* 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973), or on which parent has been made out to be completely unfit. *See Griffin v. Stone,* 834 S.W.2d 300, 305 (Tenn. Ct. App. 1992); *Harris v. Harris,* 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992). Rather, custody decisions require the courts to determine which of the available custodial alternatives appears to be best calculated to meet the child's needs.

Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Trial courts must be able to exercise broad discretion in these matters, as long as their decisions are based on the evidence and on an appropriate application of the applicable principles of law. *See D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Accordingly, appellate courts are reluctant to second-guess a trial court's decisions, *see Gaskill v. Gaskill*, 936 S.W.2d at 631, and we review these decisions de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *See Nichols v. Nichols*, 792 S.W.2d at 716; *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992).

**B.**

The pivotal question with regard to the trial court's custody decision is whether the evidence preponderates against its conclusion that Ms. Lance is comparatively more fit than

Mr. Lance to be their daughter's custodian. Mr. Lance asserts that the trial court's decision stemmed more from the trial court's concern that he fathered a child out-of-wedlock than from the current fitness of the parties. He also asserts that the evidence demonstrates that he is more stable and responsible than Ms. Lance and, therefore, that he would be a better custodial parent.

The trial court's comments from the bench leave little doubt that it disapproved of the facts that "this father was 24 years of age when he got this 17-year-old girl pregnant" and that the child was born out of wedlock. It is difficult to tell from the record what role these factors played in the trial court's ultimate custody decision. However, we need not speculate about these questions on appeal because we must review the record de novo and because our appraisal of comparative fitness need not follow that of the trial court. Under the facts of this case, we have determined that the age difference in the parties and the fact that their child was born before they were married are of only minor weight in the comparative fitness analysis.

Mr. Lance's assertion that he is the more stable and mature parent stems from his belief that Ms. Lance's infatuation with her high school boyfriend and her desire to move back to Louisiana signals her immaturity and lack of commitment to her child. While her conduct certainly evinces a lack of commitment to her marriage, it does not necessarily follow that she is any less committed to her daughter.

This court has never condoned extramarital affairs. *See Sutherland v. Sutherland*, 831 S.W.2d 283, 286 (Tenn. Ct. App. 1991). Sexual misconduct may be an indication of parental fitness, and accordingly, the courts may consider it when undertaking their comparative fitness analysis. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991); *Edwards v. Edwards*, 501 S.W.2d at 291. However, courts decline to use custody decisions to punish parents for sexual misconduct alone without some proof that the conduct is adversely affecting the children. *See Varley v. Varley*, 934 S.W.2d 659, 666-667 (Tenn. Ct. App. 1996); *Sutherland v. Sutherland*, 831 S.W.2d at 286; *Mimms v. Mimms*, 780 S.W.2d 739, 745 (Tenn. Ct. App. 1989).

Based on the facts of this case, we find no basis for concluding that Ms. Lance's inappropriate affair with her former boyfriend warrants reversing the trial court's custody decision. There is no indication that Ms. Lance is engaging in inappropriate, intimate conduct in her daughter's presence or that her daughter has been emotionally or psychologically harmed by Ms. Lance's relationship with her former boyfriend. Nor does the record contain any proof that Ms. Lance's infatuation with her former boyfriend has

caused her to neglect her daughter's needs.  Thus, Ms. Lance's meretricious relationship, by itself, is not enough to tip the scales against awarding her custody.

Weighed against Ms. Lance's relationship with her former boyfriend is the fact that Ms. Lance has taken primary responsibility for meeting the child's needs during the early years of her life.  While Mr. Lance was an attentive parent to the extent that his schedule permitted, it was Ms. Lance who had the responsibility to feed, bathe, and clothe the child.  Ms. Lance has been the consistent parent figure to the child ever since she was born.  The child has been living with Ms. Lance in New Orleans since 1997.  In light of the importance of continuity and stability in a young child's life, *see Taylor v. Taylor*, 849 S.W.2d at 328; *Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. Ct. App. 1991), we are disinclined to alter the present custody arrangement and require the child to leave her mother to return to Nashville.

### III.

Mr. Lance also takes issue with the trial court's decision to declare the parties divorced because of a desire to shield the parties' child from the knowledge that Ms. Lance had committed adultery.  We assert that the decision was wrong for two reasons.  First, Ms. Lance admitted committing adultery, and second, because it is unrealistic to expect that ignoring the plain evidence of adultery will shield the child from learning, if she does not already know, that her mother's affair with a former boyfriend caused her parents' marriage to end.  We agree that Mr. Lance should have been awarded the divorce.

Tenn. Code Ann. § 36-4-129(b) permits a trial court to declare the parties divorced, rather than awarding the divorce to one of the parties, if either or both of the parties prove that they are entitled to a divorce.  While we generally avoid revisiting a trial court's decision concerning to whom a divorce should be granted, this case presents a rare occasion requiring us to intercede.  Based on our de novo review of the record, we find overwhelming evidence that Ms. Lance committed adultery.  However, we find little evidence substantiating Ms. Lance's claim that she is entitled to a divorce from Mr. Lance.

Similarly, we have concluded the trial court's desire to shield the parties' child from knowledge of her mother's misconduct, while well-motivated, is misdirected.  The child is now five years old.  If she does not already know why her parents separated and divorced, she will certainly know soon enough even if she never sees the divorce decree.  Accordingly, we find that the trial court erred by declaring the parties divorced and that the evidence preponderates in favor of concluding that Mr. Lance is entitled to the divorce on the ground of inappropriate marital conduct.

## IV.

We affirm the judgment awarding Ms. Lance custody of the parties' daughter and remand the case with directions that the trial court amend the divorce decree to show that Mr. Lance was awarded a divorce on the ground of inappropriate marital conduct. We tax the costs of this appeal in equal proportion to Michael Allen Lance and his surety, and to Tina Gayle Lance for which execution, if necessary, may issue.


_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
BEN H. CANTRELL,
PRESIDING JUDGE, M. S.


_____
WILLIAM B. CAIN, JUDGE