IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 20, 2001 Session

## BILLY WAYNE WALKER, individually and on behalf of his deceased wife, MAYREAN WALKER v. STATE OF TENNESSEE

**Appeal from the Claims Commission for the State of Tennessee, Western Division**
**No. 97002365      Randy Camp, Commissioner**

---

**No. W2000-03079-COA-R3-CV - Filed February 5, 2002**

---

This is a medical malpractice action before the Tennessee Claims Commission.  The Commission found that the evidence presented by the plaintiff was insufficient to establish that the defendant's employees failed to meet the required standard of care.  The plaintiff appealed the decision of the Claims Commission, asserting that the Commission improperly reviewed medical sources not presented at trial.  We affirm, finding that the Commission did not base its decision on information outside the record and that any such review was harmless error.

### Tenn R. App. P. 3 Appeal as of Right; Judgment of the Commission Affirmed

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Al H. Thomas and Regina Guy, Memphis, TN for the appellant, Billy Wayne Walker.

Thomas McAlexander, Memphis, TN for the appellee, State of Tennessee.

### OPINION

This is a medical malpractice action, arising from the patient's tragic death.  Mayrean Walker ("Mrs. Walker") suffered serious injuries as a result of a car accident on September 13, 1995.  Shortly after the accident, she was transferred to the intensive care unit at the Regional Medical Center in Memphis and placed on a mechanical ventilator.  A breathing tube was inserted into the her airway.  On September 26, 1995, Mrs. Walker was taken off the mechanical ventilator.  The next day, she was transferred from the intensive care unit to a regular hospital room.  Her condition began to improve and she was being considered for discharge.  On October 10, 1995, however, she had developed hoarseness.  She was examined by Seth Linker, M.D., an otolaryngology (ear, nose and throat or "ENT") resident employed by the University of Tennessee.  After another exam by Dr. Linker, Mrs. Walker's hoarseness began to improve.

On October 15, the patient's hoarseness worsened and she began to suffer from respiratory distress. Because of his previous examinations, Dr. Linker believed that any obstruction must have been below the previously examined area. Dr. Linker contacted Chi Nguyen, M.D., the chief resident over ENT residents, and Joseph Allegretti, M.D., who served as a fellow in ENT; both were also employed by the University of Tennessee. Dr. Linker consulted with Dr. Nguyen and Dr Allegreti about Mrs. Walker's situation because he believed her condition had become critical.

After consulting with Drs. Nguyen and Allegretti, Dr. Linker prepared for an endoscope and possible tracheotomy and laser removal of granulation tissue. Dr. Linker told the nurse anesthetist that the patient was to be slightly sedated using an IV rather than being completely paralyzed, to allow her to continue breathing on her own. Despite this, for reasons unclear in the record, an anesthetic was administered which paralyzed the patient, leaving her incapable of breathing without the aid of a breathing tube.[1] The nurse anesthetist attempted to intubate the patient by orally inserting an endotracheal tube. The endotracheal tube was met with resistance, so a smaller tube was inserted. However, the smaller tube tended to back out of the airway once the balloon or cuff at the end of the tube was inflated. This made it impossible to secure the tube in place with tape, as was the standard procedure. Consequently, the nurse anesthetist was forced to hold the tube in place. Dr. Nguyen arrived shortly after the patient had been paralyzed and intubated.

When Dr. Allegretti arrived, he was concerned that the endotracheal tube held in place by the nurse might shift or be dislodged from the airway. After the three ENT doctors discussed the problem, Dr. Allegretti decided that a tracheotomy was needed to secure a more stable airway. Dr. Linker made an incision through the patient's neck and into the trachea and then inserted a tracheotomy tube down into the trachea. However, Dr. Linker could not get the tube to go any further than approximately one-and-a-half inches. Different sized tubes were used in an attempt to establish an airway, but all were unsuccessful. The patient went several minutes without oxygen before the doctors were finally able to force a tube down and oxygenate the left lung. Mrs. Walker was eventually stabilized, but the six-to-eight minute period with no oxygen left her brain dead. She died six months later.

Mrs. Walker's husband, Billy Walker, filed a claim against the State of Tennessee under the Tennessee Board of Claims Act, Tennessee Code Annotated § 9-8-101, et seq, alleging that the employee physicians "did not exercise the degree of care, skill and diligence used by hospitals and their staff generally in this community." In September 2000, the Tennessee Claims Commission conducted a four day hearing. The Commission reviewed the depositions of the three members of the ENT team, Dr. Allegretti, Dr. Nguyen, and Dr. Linker, as well as that of the ENT department head, Kevin Robbins, M.D., and the anesthesiologist, Jeffery Jernigan, M.D. The Commission also reviewed the depositions of three medical experts, a radiologist, Thomas Sweeney, M.D., and two otolaryngologists, Perry Harris, M.D. and Neal Beckford, M.D.

---

[1] Dr. Linker stated that the reason he was given for paralyzing the patient was that she had recently eaten and the anesthesiologist thought that she might vomit and aspirate the contents during the operation if she were not paralyzed.

The Plaintiff's otolaryngology expert, Dr. Harris, asserted that the ENT doctors did not act within the applicable standard of care in performing the tracheotomy. He felt that the ENT doctors were unable to immediately find the airway and then panicked, and as a result the patient went several minutes without oxygen. Dr. Harris's opinion was based on the assumption that the patient was being properly ventilated through the endotracheal tube being held in place by the nurse anesthethist and, therefore, the ENT doctors had adequate time to establish an airway. The Defendant's otolaryngology expert, Dr. Beckford, stated in his deposition that the tracheotomy was done under emergency circumstances, because the original tube was improperly seated. Dr. Beckford maintained that the ENT doctors acted within the applicable standard of care in attempting to alleviate the patient's condition.

After the hearing, the Commission entered written findings. The Commission did not credit the testimony of Dr. Harris, finding that his opinions were based on facts not in evidence or facts regarding which Dr. Harris had no experience or expertise. The Commission noted Dr. Harris's assumption that the patient was properly intubated before the ENT doctors began the tracheotomy. The Commission stated:

> The Commission is familiar with and has read and reviewed several medical treatises and articles on this subject, many of which were referred to during the taking of testimony in this case. These materials are clear - a critical point in handling an endotracheal tube is maintaining its position after successful insertion. Careful and firm taping is imperative after tracheal intubation is confirmed.

> This Commission, however, cannot be its' [sic] own expert. This Commission cannot take into account a fact which it simply believes to be true. This Commission cannot make assumptions. The decision of this Commission must be based upon the evidence presented.

The Commission then reviewed the testimony of Dr. Allegretti, noting his opinion that the airway established, with the endotracheal tube held in place by the nurse, was unstable and placed Mrs. Walker in danger. Dr. Allegretti asserted that this fact caused him to "completely reassess his operative plan." The Commission found that there was "no other evidence in the record to contradict Dr. Allegretti's statement." After reviewing the assumptions underlying Dr. Harris's opinions in light of the evidence, the Commission concluded:

> There is no evidence in the record to affirmatively support Dr. Harris' assumptions. The Commission finds that Dr. Harris rendered his opinion concerning the Defendant's deviation from the standard of care based upon facts which are not in evidence. He further gave his opinion on a fact situation . . . with which he had no experience or expertise. In the opinion of this Commission, he is unable to provide adequate testimony concerning the standard of care on the fact situation encountered by the ENT team during the procedure on Mrs. Walker.

-3-

Since the Commission discredited the testimony of the plaintiff's expert, Dr. Harris, it concluded that there was insufficient evidence to find that the ENT physicians did not meet the applicable standard. Consequently, the Commission dismissed Walker's claim. From this order, Walker now appeals.

On appeal, Walker argues that the Commission erred in reviewing and relying upon outside medical sources in reaching its conclusion that the endotracheal tube, as placed by the anesthesiology team, was a danger to Mrs. Walker. Walker asserts that the Commission improperly relied on evidence outside the record.

A court must render its decision based on competent evidence introduced at trial. *Sutherland v. Sutherland*, 831 S.W.2d 283, 285 (Tenn. Ct. App. 1991). As the Supreme Court held in *Vaughn v. Shelby Williams of Tennessee, Inc.*, "a judge is not permitted to make an investigation of a case, even an inadvertent one, off of the record, and then base a holding on the information obtained incident thereto." *Vaughn*, 813 S.W.2d 132, 133 (Tenn. 1991). A court may take judicial notice of facts which are generally understood as common knowledge, including entries in dictionaries, encyclopedias, and other publications. *Standard Life Ins. Co. of the South v. Strong*, 89 S.W.2d 367, 379 (Tenn. Ct. App. 1935). However, medical treatises are inadmissible hearsay under Tennessee law and, thus, cannot be judicially noticed. *Id.*

The Commission's written findings indicate that it reviewed medical sources outside the record in this case. However, the Commission's findings also state that the Commission "cannot be its own expert" and "cannot take into account a fact which it simply believes to be true." It notes that its decision "must be based on the evidence presented." Therefore, the Commission makes it clear that, while it reviewed outside medical sources, it did not rely upon them. Under these circumstances, we must conclude that any review of outside medical sources by the Commission would constitute harmless error. The decision of the Commission, dismissing Walker's claim, is supported by the evidence in the record.

The decision of the Commission is affirmed. Costs are taxed to appellant, Billy Wayne Walker, and his surety, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE

-4-