**Mary Louise NICHOLS,**
**Plaintiff/Appellant,**

v.

**Daniel John NICHOLS,**
**Defendant/Appellee.**

Supreme Court of Tennessee,
at Nashville.

June 18, 1990.

Jack Norman, Jr., Nashville, for plaintiff/appellant.

Joe P. Binkley, Jr., Nashville, for defendant/appellee.

## OPINION

O'BRIEN, Justice.

The parties in this case were divorced on the grounds of irreconcilable differences on 11 August 1986. They entered into a property settlement agreement which the Court considered to make adequate and suitable provisions for the care and custody of their minor children. The agreement was incorporated into the divorce decree. The custody of the children, James, five, and Michael, three, was vested in the wife in accordance with the terms and provisions of a pendente lite order previously entered in the case. This order provided for visitation privileges with the father on every other weekend and on Tuesdays, Wednesdays or Thursdays every other week when he was off from work. There is evidence in the record that by agreement between the parents the father of the children would pick them up on Tuesday or Wednesday on those weeks and they would remain with him in his home through Sunday night. On school days he would deliver them to school, or day care for the youngest one, and pick them up in the evening. He was also granted visitation privileges

for one-half of the Christmas and Thanksgiving holidays and for a reasonable, unrestricted summer vacation. This situation prevailed except for those times when he was on active duty with the National Guard and apparently worked to the mutual satisfaction of the parties.

On or about 1 November 1987 Mr. Nichols returned the boys to their mother's home and intended on that occasion to tell her he was preparing to remarry. She greeted him with the news that she had taken a job with the Veteran's Administration in Phoenix, Arizona and would be moving about the 10th of December. When she departed for Arizona, by agreement she left the children with their father until the holiday school recess. He was to place them on a plane to Phoenix on December 27th. On December 14th he filed a petition for change of custody and obtained a restraining order enjoining the mother from interfering with his temporary physical custody. She immediately filed an answer and cross petition. After a hearing the trial court entered an order finding the primary physical care, custody and control of the two minor children should be changed from the mother to the father. Provisions for visitation were included in the judgment. A motion for new trial was filed by her. Subsequently the trial court entered an order staying execution of the final decree, to become effective on 25 March 1988, which was the last day of school for the children prior to a spring recess. Thereupon the father filed a motion for review of the stay order in the Court of Appeals. This motion was granted. The boys, now 8 and 6 years of age respectively, have remained in the custody of their father since that time.

The mother's appeal was granted by this Court. It is claimed that each of the lower courts applied an erroneous standard of law for a residential parent to remove minor children from the jurisdiction. It is argued that at the time of the hearing in the trial court *Walker v. Walker*, 656 S.W.2d 11 (Tenn.App.1983), was the leading case on the issues to be determined. That the decision of the trial court and of the Court of Appeals seems to indicate that

appellant was to be held accountable in accordance with the decision in *Seessel v. Seessel*, 748 S.W.2d 422 (Tenn.1988) which was not released until some three months after the trial court decision.

The appellee responds that this argument is without merit because this Court's decision in *Rogero v. Pitt*, 759 S.W.2d 109 (Tenn.1988) indicates that such "retroactive application" is clearly appropriate. Further, that the Court of Appeals did not sua sponte invoke *Seessel* to affirm the trial court's judgment, but on the contrary, appellant invited the Court's consideration of *Seessel* and now claims error in the Court's acceptance of that invitation.

In *Rogero*, p. 112, this Court said:

"The parties have devoted lengthy portions of their briefs to the question of where the burden of proof lies in cases such as this. Since the case was instituted, however, this Court has rendered its decision in the case of *Seessel v. Seessel*, 748 S.W.2d 422 (Tenn.1988), holding that the party who files a petition such as this has the burden of proof. In this case the mother filed the petition to seek approval of a change in the custody arrangement. The burden of proof rested upon her, therefore, to establish her case by the preponderance of the evidence. This she has done. We decline the request of counsel for the mother to reconsider the *Seessel* case or to overrule it."

This case is precisely on point. The father filed a petition to seek approval of a change in the custody arrangement. He had the affirmative of the issue and the burden was upon him to establish his case. The trial court, after giving each of the parties a full opportunity to present proof, and after hearing all of the evidence offered, stated, "this is strictly a petition for change of custody". It is true that the appellant filed an answer to the appellee's original petition for change of custody and a cross-petition in which she prayed that custody of the children be restored to her, that the terms and conditions of the divorce decree be continued in full force and effect, and for the imposition of sanctions in ac-

cordance with Tenn.R.Civ.P. 11. The trial judge concluded that Mrs. Nichols' career change which involved a relocation to the State of Arizona, created a change of circumstance which warranted placing custody of the children with their father so they would not be uprooted from their home State.

Insofar as the Court of Appeals judgment is concerned, that Court did cite *Seessel* in chastising the trial court for finding a "change of circumstance" because the custodial parent moved to Arizona. That court refused to respond to the issue posed there by the appellant of whether custody may justifiably be changed solely because she moved to another State. They found the dispositive issue to be whether the appellant proved by a preponderance of the evidence that the relocation of the children to Arizona would be in their best interests. In verbatim they said:

"As we have noted, the thrust of the evidence offered by the appellant is that the relocation to Arizona was in her best interest. She so testified. Inferences, of course, may be drawn that the children's welfare is correlative to their mothers; but we cannot find that the appellant established by a preponderance of the evidence that relocation of the children is in their best interest, and neither can we say that the evidence preponderates against the judgment. Rule 13(d), T.R. A.P., *Seessel,* supra."

▬ We are of the opinion that each of the parties have misconstrued the question of where the burden of proof lies in cases of this nature. Under the practice in this State the burden of proof, in its usual and primary meaning, ... never shifts, but remains throughout the trial where it was in the first instance. The burden of producing evidence may, however, shift from time to time in the course of the trial. One way in which this is brought about is by means of presumptions which the law raises upon proof of certain facts; that is to say, in some instances the law attaches to a given state of facts certain procedural consequences with respect to the duty of producing countervailing evidence by an oppo-

nent. See *Taliaferro v. Green,* 622 S.W.2d 829 (Tenn.App.1981). In that case the court went on to say:

"The 'effect of a presumption "of law" (that is the real presumption)' says Dean Wigmore in his treatise on Evidence, 'is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent.' 5 Wigmore on Evidence (2 Ed.), Sec. 2491. But it is important to know that a presumption of this kind adds nothing to the probative force of the facts that give rise to it and when its purpose has been accomplished, that is, when the party against whom it is raised has produced countervailing evidence, the presumption disappears and the question for decision then is whether the preponderance of the evidence with respect to the determinative issue or issues is with the party who had the burden of proof in the first instance." (Citations omitted).

Notwithstanding the Court of Appeals' comment in reference to the rule in *Seessel,* we are of the opinion this principle was not addressed by the trial judge because there was no application to permit the removal of the minor children from the State. However, she did find a change of circumstances which, although not well articulated, we conclude was based on the welfare and best interests of the children. While the burden of proof was not transferred to Mrs. Nichols she was obliged to rebut the presumptions of fact raised by the evidence offered by the petitioner. This she failed to do to the satisfaction of the trial court.

▬ The appellant further says the issue of child custody is *res adjudicata,* based on the entry of the final decree awarding custody to her, insisting that decree is conclusive in a subsequent application to change custody. That is an incomplete statement of the rule which holds that where a decree has been entered awarding custody of children, that decree is *res adjudicata* and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the wel-

fare of the child requires a change in custody. See *Dodd v. Dodd*, 737 S.W.2d 286, 290 (Tenn.App.1987). We find the issue to be without merit.

The appellant argues that the evidence in the record preponderates against the decision of the trial court that a change of custody would be in the best interest of the children.

As this Court noted in *Rogero*, supra, such decisions are primarily factual, not legal. There are few legal formulae or invariable principles to guide the Court in decisions of this nature. The best interests of the children under all of the circumstances, which, of course, include their relationships with their parents must be the concern of the courts.

After a hearing on the petition for a change of custody the trial court found that the parties had entered into an agreement by which Mr. Nichols was to have very extensive visitation rights, which he exercised. He had maintained a very close relationship with his children, more so than was usual in such cases. She was of the opinion that he had greater involvement than most people in similar situations would have with their children. She found that both parents were fit and proper persons to have the care and custody of the children and there was no evidence that they were anything but good, loving parents who provided properly for them. She ordered that custody be placed with the father. The Court of Appeals concluded they could not say that the evidence preponderated against the judgment.

■ That is the standard by which we must abide in reviewing trial court judgments in child custody cases. The review of findings of fact shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn.1984); T.R.A.P. 13(d).

■ The evidence in this case shows that the two male children of the parties were born and reared in the Davidson County area. The arrangements for their care and nurturing since the divorce, brought about by decree and by accomodation, came close to a de facto, joint custody agreement. This result was apparently satisfactory to both parties until Mrs. Nichols sought and found employment in the State of Arizona. While there were some early indiscretions on the part of both parents, after the divorce, the father has now remarried and the boys are a part of an extended family with two step-sisters and a step-brother with whom they have bonded and formed a close relationship. The father has demonstrated his involvement with his sons' educational, religious, athletic and social development and the children appear well adjusted and happy in the family atmosphere which is presently provided in the father's home.

These children are fortunate in having two parents who care for their welfare and are equally able to provide for their needs and care. However, the only evidence offered by the mother was that she did not care to live in Tennessee. Her move to Arizona was inspired by career advancement. She was accompanied there by the man with whom she has had an intimate relationship since shortly after the divorce. She seeks to transplant the children to a distant city where they have no ties and will be removed from an environment which is stable and familiar to them. They will be separated from a male parent whose presence will become increasingly beneficial and important to them as they mature. We cannot find that the evidence preponderates against the judgment of the trial court. From the evidence in the record the interests of the children will be best served by allowing them to remain in the security and stability of the home environment in which they now live.

The judgment of the trial court is affirmed and the cause is remanded for the enforcement of its decree and any further proceedings which may be required. The costs are assessed against the appellant.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.