IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2001 Session

## JOANNE THOMPSON BARRETT v. CHRISTOPHER LEE BARRETT

**Appeal from the Chancery Court for Rutherford County**
**No. 98DR-888     Royce Taylor, Judge**

_____

**No. M2000-00380-COA-R3-CV - Filed October 12, 2001**

_____

In this divorce appeal the wife asserts that the trial judge erred in awarding custody of the children to the father, in refusing to award her rehabilitative alimony, and in the division of the marital estate. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

David Goad, Murfreesboro, Tennessee, for the appellant, Joanne Thompson Barrett.

John H. Baker III, Murfreesboro, Tennessee, for the appellee, Christopher Lee Barrett.

**OPINION**

**I.**

The parties married on March 9, 1991. They had two boys, who were five and six at the time of the separation. Husband worked at Nissan in Smyrna and wife worked at several different jobs during the marriage. They separated in the summer of 1998. In a pendente lite order Ms. Barrett received possession of the marital home, custody of the children, alimony, and child support. She was ordered to pay the mortgage on the marital home and the utility bills.

The period between the separation and the divorce proved to be especially tumultuous (and, no doubt, perplexing to the trial judge). Ms. Barrett accused Mr. Barrett of striking and threatening her, of cursing her in the presence of the children, and of violating several orders of protection. Mr. Barrett accused Ms. Barrett of keeping company with a violent drug abuser, of wasting and concealing martial assets, and of making untrue charges against him. The charges and

countercharges required many hearings, and some of the issues may have been unresolved at the time of the final hearing.

The court declared the parties divorced without fault on May 17, 1999 and then conducted a series of hearings on the merits of the remaining issues. On January 24, 2000 the court entered its final decree awarding primary custody of the children to Mr. Barrett. The court also divided the marital property and ordered Ms. Barrett to pay child support but suspended the payment for a year in lieu of requiring Mr. Barrett to pay rehabilitative support.

## II.
### CHILD CUSTODY

The final decree does not contain any findings of fact on the factors the trial judge considered in awarding custody to Mr. Barrett. In an oral ruling from the bench the judge made these limited findings:

> Quite clearly they're [sic] not any perfect parents. We have two parents here, and there have been some problems with both.
>
> . . .
>
> I think that the more stable environment, continuity – that Mr. Barrett needs to be the one that's involved primarily with these kids as far as the residential care of these children.
>
> I think he has been involved in the past – both parents have been involved; but I think he's – that he's in the better position to continue with the continuity and stability needed of the family unit with these children.

Ms. Barrett argues, therefore, that the decision comes to this court without a presumption of correctness and requires us to apply de novo the relevant factors found in Tenn. Code Ann. § 36-6-106 regarding child custody. But, we think that argument overlooks the fact that the factors listed in the statute are only aids in arriving at the ultimate fact of what is in the best interests of the children. *See Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983). An award of custody without more contains an implicit finding that the best interests of the child will be served by being in the primary custody of the parent to whom custody is awarded. *See Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984); *Nichols v. Nichols*, 792 S.W.2d 713 (Tenn. 1990).

We do, however, examine the evidence carefully to see if it preponderates against the trial judge's award. *Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996). In many cases the evidence is not heavily weighted either way and the cold record contains only charges and countercharges, generating more heat than light. In such cases, we mainly rely on the trial judge's

assessment of the parties' credibility. *Massengale v. Massengale*, 915 S.W.2d 818 (Tenn. Ct. App. 1995); *Mimms v. Mimms*, 780 S.W.2d 739 (Tenn. Ct. App. 1989).

Ms. Barrett's testimony centered largely on Mr. Barrett's temper, his abusive behavior toward her, and his overbearing personality. To some extent, a social worker who worked with the children and both parents corroborated the testimony. She testified that the children were anxious about their father's temper and were concerned about their mother's safety. But the social worker did not know anything about any actual abuse, and there is reason to doubt many of the incidents about which Ms. Barrett raised loud and frequent complaints.

Mr. Barrett provided testimony about Ms. Barrett's association with an admitted drug abuser and her unsuccessful attempts to deny the association. Her insistence on continuing the relationship in the presence of the children despite an injunction against it was the subject of some of the petitions for contempt the trial judge had to endure. Mr. Barrett also produced evidence from which an inference could be drawn that Ms. Barrett failed to ensure that the children finished their homework and that she was otherwise not actively involved in their school work; that she kept a dirty house; that she didn't spare the children when she provoked unnecessary confrontations with Mr. Barrett; and that she had little regard for the orders of the court. Dishonesty reflects on the parent's fitness to be a good custodian for the children. *Gaskill v. Gaskill*, 936 S.W.2d at 634 (Tenn. Ct. App. 1996).

Based on the record we cannot say the evidence preponderates against the trial judge's custody award to Mr. Barrett.

## III.
### REHABILITATIVE SUPPORT

When parties divorce, the legislature has stated the public policy of this state to favor the payment of "rehabilitative temporary support and maintenance" to the spouse that is "economically disadvantaged, relative to the other spouse." Tenn. Code Ann. § 36-5-101(d)(1). The courts have found that the purpose of the statute "is to provide a temporary income during a period of adjustment and effort of the dependent spouse to become partially or totally self-sufficient." *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). The trial court has broad discretion in awarding temporary support because the decision is factually driven and requires the balancing of the many factors contained in Tenn. Code Ann. § 36-5-101(d). *Herrera v. Herrera*, 944 S.W.2d 379 at 387 (Tenn. Ct. App. 1996). Those factors include (among others) the earning capacity of each party, the relative education and training of each party, the duration of the marriage, the age, mental and physical condition of each party, the separate assets and the marital property awarded to each party. Tenn. Code Ann. § 36-5-101(D)(1)(A) - (H).

In this case, the trial judge found that Ms. Barrett did have a financial need at the time of the divorce; but instead of ordering Mr. Barrett to make payments to her, the trial judge suspended Ms. Barrett's child support payments ($405 per month) for a period of one year.

The record shows that Ms. Barrett had embarked on a career selling real estate, and she asked the court for an unspecified amount of support for a period of one year. Obviously, the court found that she had the capacity to earn approximately $18,000 per year ($405/month in child support for two children) and the trial judge specifically found that Ms. Barrett had been awarded $19,000 in marital assets. In addition, Ms. Barrett owns a home that was her separate property at the time of the marriage. Though the record does not specify the amount of equity in the home when the parties married, it increased in value during the marriage, resulting in $15,000 of marital equity.

In effect, the trial judge awarded Ms. Barrett $405 per month for a period of one year. We cannot say that the evidence demonstrates an abuse of discretion on the part of the trial judge.[1]

## IV.
### MARITAL PROPERTY

Ms. Barrett also asserts that the trial judge erred in dividing the marital property. Her complaints center on the division of a set of collectible figurines, the award of the marital home, and the award of Mr. Barrett's 401k account.

The parties had through the years collected Department 56 Christmas Village figurines. During the separation, a dispute arose over whether Ms. Barrett had taken some of the pieces. It does appear that without making specific findings, the court ordered her to return the pieces she had taken along with the other property taken from the marital residence. Mr. Barrett testified that he was able to recover only about one-third of the collection.

The trial judge awarded Mr. Barrett the pieces he had in his possession and awarded Ms. Barrett the balance. The court found the value of the collection to be $28,900 and that the part Ms. Barrett retained was worth $20,000.

Although Ms. Barrett testified that she had only one piece of the collection, the court obviously did not believe her. Since the resolution of this issue turns on the credibility of the witnesses, the court's findings will not be reversed unless there is clear, concrete, and convincing evidence to the contrary. *Rice v. Rice*, 983 S.W.2d 680 at 682 (Tenn. Ct. App. 1998). Therefore, we affirm the court's findings on this issue.

The court awarded the marital home to Mr. Barrett, including its $34,000 of marital equity. Ms. Barrett insists that the equity in the marital home and the marital equity in her separate property should have been added together and then divided equally. This argument overlooks the fact that we do not consider individual assets in isolation. We are concerned with the equitable division of

---

[1] There is no issue on appeal about the amount of Ms. Barrett's child support, and we would point out that her obligation to pay child support is an entirely separate question from her right to rehabilitative support. When her right to rehabilitative support ends at the end of one year, she will be obligated to pick up the payments to Mr. Barrett until further orders of the court.

the entire marital estate. "As a general matter, courts will evaluate the fairness of a property division by its final results." *Bookout v. Bookout*, 954 S.W.2d 730 at 732 (Tenn. Ct. App. 1997).

The same could be said for the court's award of Mr. Barrett's 401k account. The court found that $34,000 of the account was marital property and awarded the whole amount to Mr. Barrett. But Mr. Barrett was assigned a $63,000 debt that the parties had incurred during the marriage.

When all the assets were added up and the debts subtracted from the assets of each party, Mr. Barrett received a net of $25,700 in marital property and Ms. Barrett $19,100. The court specifically found that the division was equitable because Ms. Barrett had failed to pay certain debts she had been ordered to pay pendente lite and Mr. Barrett had been forced to pay them. Upon our review of the record, we do not think that the evidence preponderates against the trial judge's division of the marital estate.

The judgment of the court below is affirmed, and the cause is remanded to the Chancery Court for Rutherford County for any further proceedings necessary. Tax the costs on appeal to the appellant, Joanne Thompson Barrett.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.