IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 09, 2014

**IN RE ADELYN B.**

**Appeal from the Juvenile Court for Benton County**
**No. 5402     John W. Whitworth, Judge**

_____

**No. W2013-02374-COA-R3-JV - Filed July 24, 2014**

_____

This case arises out of the Mother's request to relocate  with the parties' minor child. The trial court determined it was in the best interest of the child to remain in Tennessee with Father pursuant to Tennessee Code Annotated Section 36-6-108(c). We affirm the trial court's best interest finding, and remand for entry of a permanent parenting plan naming Father the child's primary residential parent and setting a parenting schedule taking into account Mother's move.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed
and Remanded**

J. STEVEN STAFFORD, J.,  delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert W. Hawley, Paris, Tennessee, for the appellant, Avery B.T.

Anthony L. Clark, Paris, Tennessee, for the appellee, David E.B.

**MEMORANDUM OPINION**[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify  the  actions  of  the  trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

**Background**

Audrey B. ("the child"), was born to Plaintiff/Appellant Avery B.T. ("Mother"), and Defendant/Appellee David E.B. ("Father") in 2007.[2] The parties were never married. At the time of the child's birth, both parties lived in Camden, Tennessee. The parties entered into an agreed parenting plan signed by the Juvenile Court Judge on July 15, 2008. The plan designated Mother as the primary residential parent. The agreement allocated 130 parenting days to the Father, with the remaining 235 days spent with Mother.

On October 5, 2009, Father filed a Petition to Modify Parenting Plan and Other Relief, requesting emergency temporary custody of the child. Father's petition alleged Mother used illegal drugs and failed to comply with the permanent parenting plan; thus, Father requested he be named primary residential parent. After hearing the matter, the Juvenile Court entered an order on November 12, 2009, setting forth a shared parenting schedule wherein each party would exercise parenting time on an alternating weekly basis. The order indicated the matter would be continued and reset upon a mutually agreed upon date. Neither parent was named the child's primary residential parent. The matter was never reset and Mother and Father continued to abide by the terms of the order.

On June 28, 2012, Mother filed a Petition to Modify Parenting Time, requesting to modify the November 12, 2009 order based upon a material change in circumstances. Mother requested that the Juvenile Court name her primary residential parent of the child and allow her to relocate with the child to the Nashville, Tennessee area. Additionally, Mother requested that the trial court enter a judgment in her favor for one-half of the 2011 tax return received by Father. The petition stated that Mother wished to relocate to Nashville in order to hold a significantly better employment position than those available to her in Camden. Father filed a response on August 8, 2012, requesting to be named the primary residential parent of the child. Father's petition alleged that Mother was not employed and that she was unable to provide stability for the child. Additionally, Father insisted there was no family support available to Mother in Nashville. Ultimately, as Mother testified during later proceedings, her efforts to move were unsuccessful due to lack of family support in the Nashville area and financial difficulties arising from her failure to receive the 2011 tax refund. As a result, Mother remained in Camden. No further action was taken by either Mother or Father and the parties continued to follow the weekly rotation schedule set in the November 12, 2009 order.

---

[2] In cases involving minor children, it is this Court's policy to redact names to protect the children's identity.

On May 23, 2013, Mother filed an amended petition to modify parenting time. This time, however, Mother sought to relocate to Louisville, Kentucky. Mother stated she was currently employed at the Looking Glass Salon and Spa near the Louisville area after being unable to find career opportunities in Camden. Mother proposed the move would be in the child's best interest because her mother and current step-father resided in Louisville and relocation would provide them with opportunities not available in Camden. Additionally, Mother stated that she had always been the primary parent of the Child and it was in the best interest of the Child to reside with her, with Father's parenting time occurring during breaks and vacations in the school year. In her amended petition, Mother again requested a judgment in her favor for one-half the 2011 tax return received by the Father[3]. Father filed an Answer on June 6, 2013, asking the Court to name him primary residential parent with visitation for Mother.

The trial was conducted on two days; July 25, 2013, and August 7, 2013. The testimony at trial revealed that the parents were spending substantially equal amounts of time with the child as directed by the order entered on November 12, 2009. It was undisputed at trial that the current arrangement could no longer work if Mother were to relocate to Louisville.

During Mother's testimony, she detailed providing for the day-to-day needs of the Child during her weeks of parenting time on her own, including cooking, cleaning, and caring for the child. Additionally, Mother testified that she made doctor, dental, and physical appointments for the child and tried to ensure she ate healthy foods. Mother also presented testimony from her mother and former step-father verifying the strength of her relationship with the child and her parenting abilities.

Mother also testified that her previous attempt to relocate to Nashville was unsuccessful due to lack of finances and lack of support system in the area. Mother stated she had planned to use her 2011 tax refund to help with moving expenses, and claimed Father never reimbursed her for the portion of the return of Child tax credit. In contrast, Father testified that Mother was uncooperative and did not respond to his attempts to share her income information with him, so he claimed the Child for that tax year.

Mother stated that once this matter was resolved, she intended to relocate to Louisville to reside with her mother and current step-father on a permanent basis. She explained that her mother and step-father would support her and the child and would allow them to stay

---

[3] The Permanent Parenting Plan order entered on July 21, 2008 ordered Mother and Father to alternate the deduction for the child on an annual basis. According to the plan, Mother was to receive the deduction for the child in 2011.

with them until Mother could gain more stable and lucrative employment. Mother testified there were no job opportunities available in Camden that allowed her to use her cosmetology degree. Mother testified that she currently wanted to move to Louisville because it was a financially lucrative area for her degree and would provide the child with greater educational opportunities. Mother testified that, to date, she had been employed for four months with the Looking Glass Salon in Indiana.[4] Mother testified that although she had applied for a cosmetology license in Indiana, she had not yet been granted a license. Further, Mother explained that to obtain employment in Louisville as a cosmetologist, she would be required to obtain 300 additional hours of training, which she eventually planned to do. When asked about her regular weekly income, Mother stated she typically made around $100 a week and that she anticipated that to continue for some time.

Mother submitted proof indicating she had done research in preparation for relocation to Louisville. Mother provided photographs of the home she and the child would be residing in with the Mother's mother and step-father. Mother's mother testified that the house had enough space for everyone and that the child would have her own room. Mother submitted information indicating the school the child would attend was in the top four percent of elementary schools in Kentucky and provided after school care along with other educational activities. Additionally, Mother provided the school calendar showing when the child would be available to spend parenting time with the Father. Mother further testified she would bring the child with her anytime she visited Camden so that Father could spend additional time with the child and that her request to relocate was not an attempt to diminish the Father's relationship with the child. On cross-examination, Mother conceded that the majority of the Child's family relations were in Camden and that she previously depended on financial help from others.

During Father's testimony, he fully acknowledged that he relied upon help from his mother and current wife to assist in day-to-day care for the child during his parenting time. Indeed, Mother testified that when she needed a baby-sitter for the child, she also relied on Father's mother for assistance. Father stated he has maintained employment at his family's business during the child's lifetime and currently makes a salary of $60,000.00 per year. Father testified that he had recently married and moved from Camden to Paris, Tennessee. Additionally, he testified that although he and his wife own a residence in Paris, Tennessee, if the Court determined it in the best interest of the child to remain in Camden, he would be willing to move back to Camden.

---

[4]According to Mother, the Looking Glass Salon is located "[a]cross a bridge" from Louisville in Indiana. The record does not reflect that actual distance between Mother's home in Louisville and her workplace in Indiana; however, Mother's testimony suggests that the distance is not significant.

According to Father's testimony, the child's best family relations on both sides of her family are in Camden. Indeed, the evidence at trial demonstrated the child has lived in Camden since birth. Father testified he continually promotes a healthy relationship between Mother and the child and doesn't speak negatively when the child questions him about Mother's actions. Father stated the child attended church regularly during his parenting time and that he cooperates fully in facilitating contact with the child's maternal family members to ensure they have regular contact with the child.

Additionally, Father provided testimony regarding Mother's care for the child. Father testified he had environmental concerns about the child being with the Mother and provided photographs of Mother's drinking and behavior. Father conceded at trial that the photos had been taken over a year prior to the hearing and Mother stated the photos were taken at times other than during her parenting time with the child. Additionally, Father testified that Mother repeatedly moved from place to place during the child's lifetime, residing with and relying on various family members for support and housing.

During his testimony, Father conceded that his wife and mother handled a lot of his parenting responsibilities with the child. Father testified that he paid the majority of the child's preschool costs and medical bills. Father further testified that he notified Mother when the child went to the doctor and took off work to take the child to her appointments. Further, Father stated that many of the activities Mother wants the child to participate in after moving to Louisville are activities in which the child is already involved.

With the permission of both Mother and Father, the trial judge conducted an *in camera* examination of the Child during the proceedings with both parties' attorney's present. After hearing the testimony at trial, the judge delivered his decision from the bench. The trial court noted that, in making its decision, it looked to Tennessee Code Annotated Section 36-6-108. First, the trial court determined that the parents were spending equal amounts of time with the child. That finding is not disputed on appeal. The trial court then determined that it was not in the best interest of the child to relocate with the Mother to Louisville. Specifically, the Court determined that pursuant to Tennessee Code Annotated Section 36-6-108(c)(5), Mother had not established a stable residence or employment in Louisville. The court concluded that if Mother relocated, the child would remain with Father during the school year until circumstances changed. The trial court further determined the custodial arrangement outlined in the November 2009 order would remain in effect if Mother chose to remain in Camden. Alternatively, the trial court suggested that if the Mother chose to relocate, visitation should be worked out between the attorneys and parties, if possible; if not possible, then the Court would set the parenting time. After a recess, Mother announced that she would remain in Camden, at least pending an appeal. Consequently, the trial court held that the parties would continue to abide by the order entered in November 2009 pending

this appeal. The trial court entered its written order on September 25, 2013. Mother timely filed her appeal.[5]

## Issues Presented

Mother raises three issues for review as stated in her brief:

> 1. Did the trial judge err in denying Mother's request to relocate with the parties' minor child under Tennessee Code Annotated 36-6-108 (c)?
> 2. Did the trial judge err in determining it was in the child's best interest for the parties to continue the status quo set out in the order filed November 12, 2009 under the current circumstances?[6]
> 3. Whether Mother is entitled to attorney's fees on appeal under Tennessee Code Annotated 36-6-108(i)?

Because Mother addresses her first two issues together in her brief, as we perceive it, there are only two issues in this appeal:

1.  Whether the trial court erred in finding that if Mother relocated to Louisville, the child's best interest was better served by naming Father primary residential parent?
2.  Whether Mother is entitled to attorney's fees incurred on appeal?
3.  We begin with the trial court's best interest determination.

## Analysis

---

[5] Upon first review, this Court determined the September 25, 2013 order was not a final order because it did not resolve Mother's request for judgement for the 2011 tax refund or Father's request for attorney's fees. On March 11, 2014, on remand from this Court, the trial court entered an order denying Father's request for attorney's fees and granting Mother a judgement for one-half of the 2011 tax return. Neither party takes issue with the trial court's ruling on this issue in this appeal.

[6] From our review of the record, Mother expressly agreed to remain in Camden pending this appeal. As such, the trial court entered an order allowing Mother to maintain her weekly visitation with the child in Camden. We are puzzled by Mother's choice to take issue with this ruling on appeal. The trial court's ruling allowed Mother to exercise the maximum amount of time with the child possible under the circumstances while this appeal was pending. Further, nothing in the record indicates that the trial court intended to require Mother to continue to exercise all her parenting time with the child in Camden after Mother moved to Louisville. Regardless, based on our decision, *infra*, we are remanding to the trial court for entry of a parenting plan taking into account the distance between Mother's new home in Louisville, and Father's new home in Paris, Tennessee.

Mother asserts that the trial court erred in denying her relocation request under Tennessee Code Annotated Section 36-6-108(c), arguing that the proof in the record preponderates against the trial court's finding that it was not in the best interest of the child to relocate with her to Louisville. Although Mother agreed to remain in Camden pending appeal, from our review of her brief, it remains Mother's intention to relocate to Louisville. Accordingly, for purposes of this appeal, we assume that Mother will relocate to Louisville regardless of the outcome of this appeal.

**Standard of Review**

In this bench trial, we review the trial court's findings of fact *de novo* with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake,* 90 S.W.3d at 569; *Nichols v. Nichols,* 792 S.W.2d 713, 716 (Tenn. 1990). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)). In addition, we are reluctant to second-guess a trial court's determination regarding parenting schedules. *Parker v. Parker,* 986 S.W.2d 557, 563 (Tenn. 1999). "Trial courts have broad discretion in devising permanent parenting plans and designating the primary residential parent. In reaching such decisions the courts should consider the unique circumstances of each case." *Burton v. Burton,* No. E2007-02904-COA-R3-CV, 2009 WL 302301 at *1 (Tenn. Ct. App. Feb. 9, 2009)(citing *Parker*, 986 S.W.2d at 563); see also Nelson v. Nelson, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001)."[A]ppellate courts will decline to disturb a parenting plan fashioned by a trial court unless that decision is based on application of an incorrect legal standard, is against logic or reasoning, or is not supported by a preponderance of the evidence." *Cummings v. Cummings,* No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5 (Tenn. Ct. App. Oct. 15, 2004).

This case is governed by Tennessee Code Annotated Section 36-6-108(c), the Parental Relocation Statute. As the statute provides, in a contested relocation matter, the first step is for the trial court to determine whether the parties spend substantially equal time with the child or children. The trial court found that the parties spent substantially equal amounts of time with the child. This finding is not disputed on appeal.

Where the trial court determines parents are spending substantially equal intervals of time with the child the statute requires a best interest analysis to determine if relocation is appropriate. *Cundiff v. Cundiff.*, No. M2007-01538-COA-R3-CV, 2009 WL 454217 (Tenn. Ct. App. Feb. 23, 2009). The best interest analysis requires consideration of several factors enumerated in Tennessee Code Annotated Section 36-6-108(c). After hearing all of the testimony in this case, the trial court made several findings pursuant to Tennessee Code

Annotated Section 36-6-108(c). The trial court determined both parties had complied with prior orders and that the parties were likely to comply with any new court orders. *See* Tenn. Code Ann. §36-6-108(c)(1) (requiring the court to consider "[t]he extent to which visitation rights have been allowed and exercised") and (2) (requiring the court to consider "[w]hether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement"). The court also found that both parents love the child and the child loves both parents, *see* Tenn. Code Ann. §36-6-108(c)(3) (requiring the court to consider "[t]he love, affection and emotional ties existing between the parents and child"), and that both parents, as well as the parents' immediate family, would support the child. *See* Tenn. Code Ann. § 36-6-108(c)(4) (requiring the court to consider "[t]he disposition  the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver").  Additionally, the trial court found that both parents are mentally and physically able to care for the child. *See* Tenn. Code Ann. § 36-6-108(c)(7) requiring the court to consider "[t]he mental and physical health of the parents").  The trial court also determined that despite evidence of alcohol consumption on behalf of the Mother, that evidence played no part in the trial court's decision. The trial court next considered the child's young age and determined there was little actual school record, but the limited school record showed that the child performed well. *See* Tenn. Code Ann. § 36-6-108(c)(8) (requiring the court to consider "[t]he home, school and community record of the child").  Further, due to the child's young age, the trial court decided the preference of the child was not paramount. *See* Tenn. Code Ann. § 36-6-108(c)(9)(a) ("The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children; . . . .). The trial court made no specific findings as to third-parties who may interact with the child . *See* Tenn. Code Ann. § 36-6-108(c)(8) (requiring the court to consider "[t]he character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child"). Thus, the trial court found that many factors did not favor either Mother or Father.

From our review of the record, we agree that many of the factors in this case do not weigh in favor of either party. Both parents clearly love and provide for the child. Nothing in the record indicates that the child has ever been deprived of any necessities while in either parents' custody. Further, testimony shows that both parents have relied on appropriate family support to help care for the child both in the past and currently—Mother through her parents and Father through his parents and his current wife. As such, the evidence does not preponderate against the trial court's findings on these issues.

The trial court, however, did conclude that two factors weighed in favor of Father: stability and continuity. *See* Tenn. Code Ann. § 36-6-108(c)(5) (requiring the court to consider "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment").  In its decision, the trial court stated:

So basically it comes down to one or two factors that are left. And that would be the importance of continuity in the child's life and the stability of the family units. In this particular case, I find that the family support, as I've stated previously, has been really important. And I do find that the family support from both sides have been supportive and that there is support on both sides.

I don't find at this time, at least to this point, that the mother has established the stability in Louisville, that even though she's been offered a temporary place to live and in her testimony a temporary job until she can get enough hours to go somewhere else, that there is not the stability there that would be with allowing the child to remain here with the father.

We agree with the trial court that Father has somewhat more stability than Mother. *See* Tenn. Code Ann. § 36-6-108(c)(6). Unlike Mother, who earns only $100.00 per week at a temporary job, Father has stable employment earning between $45,000.00 and $60,000.00 per year. Father has held this job for a number of years, first as a part-time employee, and now as a full-time employee. Mother asserts, however, that she will likely earn more income as a cosmetologist once she has completed the appropriate number of training hours that will allow her to work in Louisville, rather than in Indiana. This Court has previously expressed concern about a proposed relocation when it is supported only by the hope of greater economic opportunities. *See **In re Spencer E.***, No. M2009-02572-COA-R3-JV, 2011 WL 295896, at *10 (Tenn. Ct. App. Jan. 20, 2011); ***Rogers v. Rogers***, No. M2008-00918-COA-R3-CV, 2009 WL 1034795, at *7 (Tenn. Ct. App. April 16, 2009); ***Mitchell v. Mitchell***, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, at *3 (Tenn. Ct. App. June 27, 2005). Indeed, mere "belief and hope" in the possibility of career advancement is not sufficient to establish a reasonable purpose. ***Slaton v. Ray***, No. M2004-01809-COA-R3-CV, 2005 WL 2756076, at *3 (Tenn. Ct. App. Oct. 24, 2005). Accordingly, we must consider the circumstances as they will exist upon Mother's move, not the circumstances that may exist in the distant, uncertain future.

We also agree that placing the child with Father will result in greater continuity for the child. *See* Tenn. Code Ann. § 36-6-108(c)(5) (requiring the court to consider "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment"). Testimony shows that Mother moved frequently during the child's life, approximately eight times since the child's birth. While Father appears to have also moved during the child's life, including during these proceedings, his moves have not occurred with the same frequency, nor do they appear to have been based on whim. Instead, Father's moves indicate a certain growing maturity: moving first from a college campus to

his parents' home in Camden after the child was born, then moving to his own home in Camden, and finally starting a new life with his current wife in Paris, Tennessee. Further, while both parties previously relied on financial support from their family, unlike Father, Mother testified that she will continue to require financial assistance from her family once she moves to Louisville. In addition, unlike Mother's proposed move, Father's move does not place him significantly farther away from the child's current family support system. Although the record does not contain information regarding the distance between Camden and Paris, we take judicial notice that the distance is approximately 22.5 miles. *See* Tenn. R. Evid. 201 (allowing the court to take judicial notice of facts "not subject to reasonable dispute"). Indeed, because Father will maintain his employment at his family's business, it is not unreasonable to assume that Father will still maintain close ties with family in Camden. Finally, Mother's recent choices have illustrated a lack of stability and continuity; Mother previously requested permission from the trial court to move to Nashville, also on the basis of greater economic activity, but was unable to move due to lack of family support. In contrast, Father's stable employment shows that he will offer somewhat more stability and continuity to the child.

We do not make this decision to discourage Mother from seeking greater financial independence. Indeed, as this Court explained:

> [In child custody cases] [t]he needs of the children are paramount; while the desires of the parents are secondary. Custody should never be used to punish or reward the parents, but rather should promote children's best interests by placing them in an environment that will best serve their physical and emotional needs.

*Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). Accordingly, we do not seek to punish Mother for her choice to move to Louisville to seek greater financial opportunities. However, her proposed move has made the current parenting schedule unworkable and the trial court, as well as this Court, must make a decision that will further the best interest of the child. Because all other factors are substantially equal, Mother's lack of stability must be given great weight.

Based on the foregoing discussion, we conclude that the trial court did not abuse its discretion in concluding that, should Mother move to Louisville, it is in the child's best interest to remain with Father, with Mother being provided the maximum amount of parenting time possible given the distance, in the trial court's discretion. *See* Tenn. Code Ann. 36-6-106(a) ("In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible

in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors."). Accordingly, we remand to the trial court to enter a parenting plan naming Father primary residential parent and awarding Mother parenting time with the child taking into account Mother's move to Louisville.

## Attorney's Fees

Mother's final issue is a request for attorney's fees incurred on appeal pursuant to Tennessee Code Annotated Section 36-6-108(i).[7] The relevant section of the Parental Relocation Statute states:

> Either parent in a parental relocation matter may recover reasonable attorney's fees and other litigation expenses from the other parent in the discretion of the court

Tenn. Code Ann. §36-6-108(i). Mother submits that her request is based upon the difference in the parents' income and the fact that she is unable to work full time under the trial court's ruling.

The decision whether to award attorney's fees on appeal is a matter within the sole discretion of this Court. **Hill v. Hill**, No. M2006-02753-COA-R3-CV-2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007) (citing **Archer v. Archer**, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). We are cognizant of the disparate incomes of the parties; however, we note that our decision in this case necessitates the entry of a new parenting plan that will allow Mother to relocate to Louisville. Further, we note that Mother voluntarily agreed to remain in Camden pending appeal. Under these circumstances, we decline to award Mother attorney's fees incurred on appeal.

## Conclusion

The judgement of the Benton County Juvenile Court is affirmed and this matter is remanded to the trial court for further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Avery B.T., and her surety.

---

[7] Mother does not argue that the trial court should have awarded her attorney's fees for the proceedings in the trial court.

_____
J. STEVEN STAFFORD, JUDGE