# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 26, 2012 Session

## LAWRENCE TAYLOR, JR. v. LADONNA KNOTT

**Appeal from the Juvenile Court for Davidson County**
**No. 2004004244PT125106      Betty K. Adams Green, Judge**

---

**No. M2012-00172-COA-R3-JV - Filed December 12, 2012**

---

Mother of two children appeals the trial court's finding of a material change of circumstances and modification of the parenting plan; Mother also appeals the requirement that she reimburse Father for certain costs incurred. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Jonathan Lynn Miley and Fannie Jordan Harris, Nashville, Tennessee, for the Appellant, LaDonna Knott.

Danny J. Baxter, Nashville, Tennessee, for the Appellee, Lawrence Taylor.

## OPINION

Lawrence Taylor ("Father") and LaDonna Knott ("Mother"), who never married, are the parents of two children; this appeal is from the ruling on Father's petition to modify the parenting plan.

## I.      Facts and Procedural History

On October 14, 2005, the court entered an order designating Father as the primary residential parent and establishing a parenting schedule. In May 2007, the court modified the parenting schedule so that the parties shared equal parenting time.

On April 19, 2010, Father filed a Petition for Modification and for Other Relief alleging that Mother agreed to care for the children during Father's vacation to Mexico in

March of 2010; that after he arrived in Mexico, Mother informed him that she would not keep the children; that Mother threatened to allow the children to go into state custody if Father did not arrange for their care; and that Father purchased an early return ticket home from Mexico as a result. Mother filed her response asserting that she made a "good faith effort to care for the children during the Father's parenting time."

The petition was heard on February 11, May 27, and August 22, 2011. The court entered a final order on October 17, 2011, holding that there was a material change of circumstances that required the court to modify the parenting time and that a modification was in the best interests of the children; Mother's parenting time was reduced to alternating weekends, alternating holidays, and two weeks in the summer. The court further ordered Mother to reimburse Father for his return plane ticket and his attorney fees.

Mother raises the following issues on appeal:

1. Whether a material change of circumstance occurred that would justify modification to the existing parenting plan?
2. Whether a best interest of the children test was conducted by the trial court and if said test would justify a modification of the parenting plan?
3. Whether Mother should be required to reimburse Father for a plane ticket from Mexico?

Father requests his attorney's fees on appeal.

## II. Discussion

### A. Modification of the Parenting Plan

The threshold issue in proceedings to modify a parenting plan is whether a material change in circumstances affecting the child's best interest has occurred since the adoption of the existing parenting plan. Tenn. Code Ann. § 36-6-101(a)(2); *see Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). After making the finding that a material change of circumstances has occurred, the court proceeds to make a fresh determination of the best interest of the child. *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006); *Kendrick*, 90 S.W.3d at 569. We review decisions in such cases *de novo* with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick*, 90 S.W.3d at 569; *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). In addition, we are reluctant to second-guess a trial court's determination regarding parenting schedules. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). "Trial courts have broad discretion in devising permanent parenting plans and designating the primary residential parent. In reaching such decisions the courts should consider the unique circumstances of

each case." *Burton v. Burton*, No. E2007-02904-COA-R3-CV, 2009 WL 302301, at *1 (Tenn. Ct. App. Feb. 9, 2009) (citing *Parker*, 986 S.W.2d at 563); *see also Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Nelson*, 66 S.W.3d at 901 (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)).

For purposes of modification of the residential parenting schedule, the petitioner has the burden to prove by a preponderance of the evidence a material change of circumstance, "which may include, but is not limited to, significant changes in the needs of the child over time . . . failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(C). The statute regarding changes to a residential parenting schedule "sets a very low threshold for establishing a material change of circumstances. Indeed, merely showing that the existing arrangement has proven unworkable for the parties is sufficient to satisfy the material change of circumstances test." *Rose v. Lashlee*, M2005-00361-COA-R3-CV, 2006 WL 2390980, at *3 n.3 (Tenn. Ct. App. Aug. 18, 2006) (citing *Rushing v. Rushing*, No. W2003-01413-COA-CV, 2004 WL 2439309, at *6 (Tenn. Ct. App. Oct. 27, 2004), and *Turner v. Purvis*, No. M2002-00023-COA-R3-CV, 2003 WL 1826223, at *4 (Tenn. Ct. App. Apr. 9, 2003)).

In the Final Order, the court made the following findings of fact:

1) Mother deliberately sabotaged Father's vacation by agreeing to keep the children and then changing her mind after he had left the country.
2) Mother will not co-parent. She is unable to share in activities where Father and Step-mom are present.
3) The comments and actions of Mother are increasingly noticeable to the boys.
4) While Mother accuses Father of being controlling and harassing, the proof did not [support] this and her e-mails indicate her own controlling and harassing behavior.

Mother takes issue with these findings and cites what she contends is contrary testimony in the record.

We have reviewed the testimony cited by Mother and, while the specific testimony she cites arguably conflicts with several of the court's findings, the entire evidence, taken as a whole and in context, does not preponderate against the court's findings.[1] The trial court,

---

[1] In her brief, Mother cites primarily to her testimony and that of Father. Ronette Taylor
(continued...)

which characterized its involvement in this dispute as "a long, painful history," was able to assess the credibility of each witness, to give appropriate weight to the testimony, and make its findings.[2]

Mother argues that the findings do not support the conclusion that there was a material change in circumstances because the children were not impacted in a material way. We do not agree.

Father testified regarding a specific incident at a school orientation program in August 2010, began at the same time as Mother's normal pick up time. He testified that Mother arrived and pulled the children out in the middle of the program like "two puppies on a leash"; that Mother later returned with the children to a separate portion of the program, but held the children's hands the entire time and would not let the children interact with Father or Stepmother; and that the children's entire demeanor changed from outgoing to "passive" once Mother arrived. Ms. Thurston testified that "when we're at activities and there is an exchange of the children . . . [the children] almost seem to shut down because it's like they're afraid [and saying] who am I allowed to talk to at this particular moment." Ms. Thurston also testified that she observed telephone calls between the children and Mother, and that the children "get shut down" in these conversations when speaking about Father.[3]

---

[1](...continued)
("Stepmother"), Amber Rigsby, an after school caretaker, and Wendy Thurston, the children's godmother, also testified at the hearing; in addition, substantial email communications between Mother and Father were admitted into evidence.

[2] We do not find it necessary to characterize Mother's behavior with respect to Father's Mexico trip as "deliberate sabotage"; we agree that record supports the finding that Mother's behavior was inappropriate and led to Father's early return from his trip.

[3] Ms. Thurston, who frequently babysits the children, testified that the children often will put their phones on speaker or video conference when speaking with Mother and that, as a consequence, she is able to hear the conversations. She testified as follows:

> Q: So you observed Mr. Taylor with the children after they come back from Ms. Knott's house?
> A: Yes.
> Q: What have you seen?
> A: When they -- he asks them what they did, did you have a good time. They will talk about what they did with mom, or what they're going to do and he's very encouraging of that. That's great, that sounds like fun. I have also been there when they've been on the phone with her and talking about what they're doing with him and they just get shut down.
> Q: What did you see or hear?
> A: I hear[d] Ms. Knott changing the subject, or well, mommy misses you so

(continued...)

The trial court, in discussing the evidence, stated in part:

> There is tension at school functions and other activities when both parents are present. (Instead of this being the supportive and encouraging environment for the boys that it could be, it becomes one of hostility.) When the boys had a sleep over at a friend's house, Mother called and told them she was sad when they weren't with her and that she would have been happy to keep them and continued to tell them how sad she was, visibly upsetting the younger child.
> * * *
> It is obvious that Mother loves the boys. It is also obvious that she is not willing to work with others in their lives and cannot put her jealousy and insecurity aside for the betterment of the boys.
> * * *
> Mother states she never intended for the children to go into DCS custody. That is not, however, the impression she gave Father via her e-mails, nor is it what witnesses testified to in court. Her anger and bitterness bleed through her e-mails. Children are more perceptive than adults believe them to be and these two boys are literally caught between the two people they love the most.

Taken as a whole, the record supports the conclusion that a change of circumstances had occurred since the entry of the May 2007 order. Among conditions constituting a material change of circumstances as set forth in Tenn. Code Ann. § 36-6-101(a)(2)(C) are "other circumstances making a change in the residential parenting time in the best interest of the child"; this is such a case. The conflict between Mother and Father continued to escalate following the court's 2007 order and was heightened by the marriage of Father to Stepmother in February 2008.[4] The events surrounding the Mexico trip that ultimately caused Father to file for a modification were not isolated but were part of a larger pattern of

---

[3](...continued)

> much, or we're going to do that, too. She just doesn't listen to it. It just gets swept under the carpet, to the point where the boys stop talking about it.

Q: Have you seen that affect the children?
A: Yes.
Q: How do they act differently?
A: They just seem to be -- they just shut down. They just do. They're not excited anymore. It's kind of like, why should I talk about it.

[4] Mother testified that Father has attempted to replace her with Stepmother; the evidence showed that, on one occasion, Mother would not allow the school to release the children into Stepmother's care, and on numerous occasions where Stepmother signed the children's school materials, Mother covered Stepmother's signature with correction fluid and replaced it with her own.

conduct by Mother; they constitute a material change in circumstance. We affirm, therefore, the trial court's holding, and turn to a review of the determination that modifying the parenting schedule was in the best interest of the children.

Mother contends that the court "failed to conduct an actual best interest of the child test" and that there is "no evidence" that Mother was unwilling or unable to facilitate and encourage a close and continuing parent-child relationship between the children and the other parent.

In its order, the court discussed the best interest of the children as follows:

> In comparing the factors that Court must consider (T.C.A. § 36-6-404(b)) in setting a residential schedule, Mother and Father are equal with one very important exception—Mother has repeatedly shown this Court that she is either unwilling or unable to facilitate and encourage a close and continuing parent-child relationship between the children and the other parent, consistent with the best interest of the children

The court further stated that "when a parent's actions cause discomfort and anxiety for the children, it is time for the Court to step in and put an end to the continued strife." The court concluded that a change in the parenting schedule would be in the children's best interest

Based upon our review of the record, the trial court appropriately reviewed the factors enumerated in Tenn. Code Ann. § 36-4-404(b) and in light of the children's needs.[5] The evidence, especially the numerous e-mails, fully support the court's conclusion that Mother is bitter, and we agree that this bitterness has, in turn, prevented Mother from being able to encourage a relationship between the children and Father. As observed by the court, the record reflects the discomfort and anxiety the children experienced as a result of Mother's

---

[5] Mother contends that the trial court erred in applying the factors enumerated in Tenn. Code Ann. § 36-4-404(b), rather than those found in Tenn. Code Ann. § 36-6-106. Both statutes set forth a non-exclusive list of factors applicable when the court adopts a parenting plan. Tenn. Code Ann. § 36-6-106 enumerates factors relevant to the best interest of the child in divorce cases and other child custody determinations; Tenn. Code Ann. § 36-6-404(b) enumerates factors relevant to the court's designation of a primary residential parent and the division of parenting time. The factors found in Tenn. Code Ann. § 36-6-404(b) are substantially similar to the factors set out in Tenn. Code Ann. § 36-6-106(a); further, both statutes allow the court to consider any other relevant factors. *See Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *6 (Tenn. Ct. App. Oct. 24, 2012). "[I]n most cases, the analysis and the result would be the same regardless of which set of factors is applied." *Id.* Such is true in this case; the conclusion that a change to the parenting plan is in the best interest of the children would be reached under either statute.

behavior.  Thus, we affirm the trial court's holding that the change in the parenting plan is in the best interest of the children.

## B.     Order to Reimburse Father

Mother contends that the requirement that she reimburse Father for the cost of his flight from Mexico was "purely punitive in nature as no prior order of the court or statute would provide for such an award" and argues that she did not possess the state of mind necessary to support an award of punitive damages.

Father testified that in early March he asked Mother if she would keep the children during his upcoming vacation; Mother agreed.  After Father and Stepmother arrived in Mexico on March 27, Mother informed Father by email that she would no longer keep the children on Tuesday or Thursday of that week.  Ms. Rigsby testified that on Tuesday morning, Mother brought her a copy of the emails and stated that she would not pick the children up that evening; Ms. Rigsby informed Mother that Department of Children's Services ("DCS") would be called if children were not picked up by 6:30 p.m., and Mother replied, "Do what you have to do."  Ms. Rigsby called Father to discuss the issue.  Father testified that he purchased a return flight for $730.65 on Tuesday and departed for Nashville; Stepmother remained in Mexico.  The testimony showed that Mother later arranged for the children's grandmother to pick the children up from school on Tuesday; Father testified that he learned of this arrangement when he arrived in Texas for his layover and that he retrieved the children when he arrived in Nashville.

As an initial matter, we do not agree with Mother's characterization of the order that she reimburse Father for this expense as either punitive or an award of punitive damages.  Father included the request that he be reimbursed in his prayer for relief; inherent in the court's findings was the fact that the expense would not have been incurred but for the failure of Mother to honor her agreement to take care of the children while Father was in Mexico.  It was within the authority of the court in enforcing its prior orders, including the parenting plan, to make the award.

In ordering Mother to reimburse Father for the full cost of the flight, the court summarized a series of emails by noting that Mother told Father that he "could not force her to keep the children, should call Wendy Thurston, the children would go into DCS custody, etc."[6]  Given the trial court's experience with these parties and this continuing issues relating to the parenting plan, the court's order that Mother reimburse Father was within its discretion, and we decline to overturn it.

---

[6] We have reviewed the emails and the court's summary is correct.

### III. Attorney's Fees

Mother contends that she is entitled to attorney's fees at trial and on appeal. Father requests his attorney's fees on appeal.

An award of attorney's fees in child custody actions is within the discretion of the trial court. *Kesterson v. Varner*, 172 S.W.3d 556, 573 (Tenn. Ct. App. 2005). The abuse of discretion standard does not permit this Court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Rather, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).

After reviewing the record, we affirm the trial court's discretionary decision to grant Father's request for attorney's fees.

An award of appellate attorney fees is within this Court's sound discretion. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In our discretion, we award Father his attorney's fees incurred on appeal and remand for the calculation of those fees.

### IV. Conclusion

For the reasons set forth above, we affirm the court below and remand for the determination of Father's attorney's fees on appeal.

RICHARD H. DINKINS, JUDGE